[No. 6,481.—Department No. 1.]

## DAVIS v. THE ROCK CREEK L. F. & M. CO.

Default — Discretion of Court. — *Held*, upon the facts of the case, that there was no abuse of discretion, on the part of the Court below, in setting aside a default.

Contract of Corporation — Power — Trustee — Evidence — Fiduciary — Constructive Fraud. — By a unanimous vote of the trustees of the corporation defendant, it was resolved to borrow a certain sum of money, and to execute a mortgage upon the property of the corporation to secure the payment of the same—the money to be applied to the payment of the debts of the corporation—and to that end A. Wolf, president, and F., the secretary, were authorized to execute a mortgage in the name of the corporation. A. Wolf did not borrow any money, but he had purchased the debts of the corporation and assigned them to A. Wolf & Co., (of which firm he was a member) and the notes and mortgage were executed to A. Wolf & Co. to secure the said indebtedness. In an action to foreclose the mortgage brought by the assignee of the mortgagees, *held*, first, that the resolution did not authorize the execution of the notes and mortgage for any such purpose; and secondly, and apart from this consideration, the law would not permit one who acts in a fiduciary capacity thus to deal with himself in his individual capacity; and *held*, accordingly, that the Court below did not err in excluding the notes and mortgage from the evidence.

Id.—Ratification.—*Held*, upon the facts of the case, that there was no ratification of the notes and mortgage.

Appeal from a judgment for defendant, and from an order refusing a new trial, in the Second District Court, County of Butte. Hundley, J.

The default was opened on the affidavits of Geo. Parry, a stockholder, and J. M. Bassett, the president of the corporation defendant.

The affidavit of the former stated that he was the principal stockholder of the corporation; that when he ascertained that suit had been commenced, he applied to Bassett to know whether he had been served, and was answered in the negative; that he had always intended to have the defendant enter an appearance, and came to Oroville for that purpose; that, up to the entry of the default, he did not suppose that any service had been made on the defendant; that the default had not been taken through any neglect or fault of affiant, but through the mistake of Bassett and his statement to affiant.

The affidavit of Bassett stated in effect, that no complaint was served upon him with the summons, and that he supposed the service was wholly invalid on that account, until better informed by his attorney after the entry of default; and that if he had supposed it was valid, he would have answered it. There was also a sufficient affidavit of merits.

The notes and mortgage were offered in evidence, and objected to by the defendants on the grounds indicated in the opinion of the Court; and the objections were sustained, the evidence excluded, and the plaintiff excepted.

On the trial, the witness Fairbanks, besides testifying as stated in the opinion, testified as follows:

" They (the notes and mortgage) were executed in the presence of all the trustees, and they consented thereto, to the best of my knowledge and belief."

*Gray & Gale,* and *I. S. Belcher,* for Appellant.

The Court erred in opening the default. (*Chase* v. *Swain,* 9 Cal. 130; *Bailey* v. *Taaffe,* 29 id. 422; *Reidy* v. *Scott,* 1 P. C. L. J. 165.) But the notes and mortgage were not void nor voidable, and the cases referred to were not in point. Wolf had a right to loan money to the corporation, or to advance money to pay its debts, and this was what he did; and the corporation had a right to repay him, or to give him its notes and mortgage to secure future repayment. (*Twin-Lick Oil Co.* v.

*Marbury*, 1 Otto, 587 ; *Smith* v. *Lansing*, 22 N. Y. 520 ; *Merrick* v. *Peru Coal Co.* 61 Ill. 478 ; *Hayward* v. *The Pilgrim Society*, 21 Pick. 270 ; *Ashurst's Appeal*, 60 Penn. 314 ; *Buell* v. *Buckingham*, 16 Iowa, 284.)

There is no pretense that there was anything fraudulent or unfair in the transaction. There is no dispute that Wolf & Co. paid out the $12,895 for the company, and that the company had the full benefit of the money. There is no denial that all the trustees and stockholders were present, and knew and approved of all that was done. "They (the notes and mortgage) were executed in the presence of all the trustees, and they consented thereto, to the best of my knowledge and belief." (Civil Code, § 2232 ; Story on Agency (6th ed.) § 210 ; Field on Corporations, §§ 163 to 167 ; Green's Brice's Ultra Vires, p. 463, *et seq.*)

*J. M. Burt*, and *Harrison & Harris*, and *F. C. Lusk*, for Respondents.

All contracts made by an agent with his principal, or by a trustee with his *cestui que trust*, are presumed to be fraudulent, even in cases where the principal and agent both participated. (Story Eq. Jur. § 311; Story on Agency, § 212; *Comstock* v. *Comstock*, 57 Barb. 453.)

In executing this mortgage, A. Wolf sought to secure to himself an advantage not common to all of the stockholders, and was guilty of an unauthorized act, and violated a plain principle of equity applicable to trustees, and the act was void. (*Koehler* v. *Black River Falls Iron Co.* 2 Black U. S. 721; Field on Corp. § 174; *Hoyle* v. *Plattsburgh R. R. Co.* 54 N. Y. 314.)

These notes and mortgage are against public policy and void, and could not be enforced even if the presumption of fraud were overcome. (*Aberdeen R. R. Co.* v. *Blaikie*, 1 McQueen's Rep. 461; *Pickett* v. *School District*, 25 Wis. 551; Story on Agency, §§ 9, 10, 210, 211; *Bunker* v. *Miles*, 30 Me. 431; *Walker* v. *Palmer*, 24 Ala. 358; *Andrews* v. *Pratt*, 44 Cal. 309; *Wilbur et al.* v. *Lynde & Hough*, 49 id. 290; *San Diego* v. *S. D. & L. A. R. R. Co.* 44 id. 106.

In the case of a trustee, it is not sufficient to show that no advantage has been taken, but the *cestui que trust* may set aside the transaction at its option." (Story Eq. Jur. § 311. See also : *Cane* v. *Lord Hare*, 2 Dow, 289 ; Story Eq. Jur. § 322 ; Story on Agency, § 212; *Comstock* v. *Comstock*, 57 Barb. 453.)

ROSS, J. :

The complaint alleges that on the 14th day of June, 1877, the defendant corporation, for a valuable consideration, executed to A. Wolf & Co. three several promissory notes, each for the sum of $4,328.33, making in the aggregate the sum of $12,985, and to secure the payment of the notes executed on the same day to Wolf & Co. a mortgage upon the property of the corporation.   The notes and mortgage were afterward assigned to the plaintiff, and not having been paid, this action was instituted to foreclose the mortgage.    McGrath, who held a subsequent mortgage from the corporation, was made a party defendant. He answered, denying that the defendant corporation ever executed the notes and mortgage mentioned in the complaint, and setting up his own mortgage.   The default of the defendant corporation was entered, which was afterward, on motion, based upon affidavits, set aside by the Court, and an answer permitted to be filed by the corporation.   By its answer the latter also denied that it ever executed, or caused or authorized to be executed, the notes and mortgage set out in the complaint as the basis of the plaintiff's action.

We think there was no abuse of discretion on the part of the Court in setting aside the default and permitting the answer to be filed.

The record shows that there were five trustees of the corporation, and that these trustees held all of its capital stock.   The A. Wolf of the firm of A. Wolf & Co., to whom the notes and mortgage were given, was one of the trustees and the president of the corporation ; and he, as president, together with one Fairbanks, as secretary, executed them on behalf of the corporation. As the basis of their authority so to do, the plaintiff offered and read in evidence, at the trial, a resolution of the Board of Trustees, in words and figures as follows :

"At a meeting of the Trustees of the Rock Creek Lumber, Flume, and Mining Company, held the 15th day of June, 1877, the following resolution was offered and unanimously adopted—the following trustees being present: A. Wolf, E. McGrath, H. A. Fairbanks, C. Wright, J. F. Dana:

"It is unanimously resolved by the Trustees of the Rock Creek Lumber, Flume, and Mining Company, a corporation, to borrow $12,985, and to secure the payment of said sum of money, to execute a mortgage upon the property of said corporation, said sum of money to be applied to the payment of the debts of said corporation, and to this end A. Wolf, president, and H. A. Fairbanks, secretary of said Rock Creek Lumber, Flume, and Mining Company, are hereby directed and authorized to make, execute, and deliver, and on behalf of said corporation, and as its act and deed, a mortgage upon said corporation property, and to affix to said mortgage and the notes which it secures, the corporate name of said corporation.

H. A. Fairbanks, Secretary.

Signed:　　　　　　　A. Wolf,
H. A. Fairbanks,
E. McGrath,
C. Wright,
J. F. Dana,
Trustees."

It will be observed that the complaint alleges that the notes and mortgage were executed on the 14th day of June, 1877, whereas the resolution does not appear to have been adopted until the day following, June 15th. If, therefore, the plaintiff be held bound by the allegations of his complaint in this particular, there would appear no authority whatever for the execution of the notes and mortgage. It was said, however, at the argument, that they were not in fact executed until after the adoption of the resolution, and Fairbanks, the secretary and a witness for the plaintiff, *testified* that they "were executed in pursuance of the resolution or order of the trustees." We shall so treat them for the purpose of this decision.

Fairbanks, who was the only witness introduced on the trial, also testified that "A. Wolf did not borrow any money for the corporation that I know of, but purchased and assumed said

debts in the name of A. Wolf & Co., and for the payment of which said notes and mortgage were executed." The resolution did not authorize or contemplate the execution of the notes and mortgage for any such purpose. It authorized and contemplated the borrowing of $12,985, and to that end authorized and directed the president and secretary to execute for and in the name of the corporation, the necessary notes, together with a mortgage upon the corporate property. To borrow the money and to execute the notes and mortgage of the corporation to secure its payment was the sole power conferred on the president and secretary by the resolution. This they did not do, nor attempt to do, so far as the record shows. Instead, the president " purchased and assumed said debts in the name of A. Wolf & Co.," of which firm he was at the time a member, and then proceeded, in connection with the secretary, to execute the notes and mortgage in suit. This was clearly unauthorized by the resolution adopted by the Board of Trustees. (*Koehler* v. *Black River Falls Iron Company*, 2 Black, 719.) But apart from this consideration, the transaction in question cannot be upheld. The law, for wise reasons, will not permit one who acts in a fiduciary capacity thus to deal with himself in his individual capacity. The position of A. Wolf as a member of the firm of A. Wolf & Co., and his position as trustee and president of the corporation defendant, were inconsistent and conflicting. In purchasing the debts of the corporation in his individual capacity, it was to his interest to buy them at as great a discount as possible. The greater the discount the greater his gain. If he succeeded in purchasing the debts at *any* discount, to that extent he secured to himself an advantage not common to all of the stockholders. To permit this to be done would be to permit the violation of one of the plainest principles of equity applicable to trustees. In this particular case it does not appear that Wolf secured the demands against the corporation at any discount, neither does it appear that he did not. Nor does the policy of the law permit any inquiry into that question. Occupying as he did the position of trustee, he should not have put himself in a position adverse to his *cestuis que trust*. One cannot faithfully serve two masters whose interests are diverse. (*Andrews* v. *Pratt*, 44 Cal. 309; *San Diego* v. *S. D. and*

*L. A. R. R. Co.* 44 id. 106; *Wilbur* v. *Lynde*, 49 id. 290; *Picket* v. *School District No.* 1, 25 Wis. 552; *Cumberland Coal Co.* v. *Sherman*, 30 Barb. 553; *Aberdeen Railway Co.* v. *Blakie*, 1 MacQueen, 461; Field on Corp. §§ 174 and 175, and authorities there cited.)

Respecting the point made to the effect that the transaction was ratified by the corporation, it is sufficient to say that even if it admitted of ratification, there was no evidence of such ratification. (*Cumberland Coal Co.* v. *Sherman*, 30 Barb. 575, and authorities there cited.) It results from these views that the Court below was right in sustaining the defendant's objections to the notes and mortgage.

Judgment and order affirmed.

McKINSTRY, J., and McKEE, J., concurred.