[Nos. 11326, 11823, and 11912. In Bank. — December 9, 1890.]

# THE SAN FRANCISCO WATER COMPANY, APPELLANT AND RESPONDENT, *v.* SOLON PATTEE ET AL., RESPONDENTS AND APPELLANTS.

CORPORATION — PURCHASE OF CORPORATE PROPERTY BY MANAGING AGENT — ENFORCEMENT OF TRUST — FINDINGS — VALUE OF PROPERTY. — In an action by a corporation against one who had been its secretary and managing agent, and who had secretly secured title to the corporate property, under execution and tax sales, and against others to whom he had conveyed portions of it, to declare a trust, and to compel a reconveyance of the property to the corporation, upon reimbursement of the moneys expended in securing the titles and in procuring a subsequent patent, an issue as to the value of the property is immaterial, and the failure to find thereupon is not ground for reversal of a judgment in favor of the corporation.

ID. — DUTY OF MANAGING AGENT — NOTICE OF ADVERSE INTEREST — FRAUD UPON CORPORATION. — The general agent and manager of a corporation is bound to act towards it in the highest good faith, and to give to it immediate information of any adverse interest which he may acquire in its property. He is not at liberty to obtain any advantage over it by concealment from its directors of the true condition of its affairs; and it is a fraud upon the corporation for him to take part in any transaction or to acquire any interest adverse to its interests, without the consent of the directors, given upon full knowledge of the facts.

ID. — RESTITUTION OF EXPENDITURES — INDEBTEDNESS OF CORPORATION — PREFERENCE OVER CREDITORS. — In decreeing restitution to such managing agent, as a condition of the enforcement of the trust in favor of the corporation, the restitution is properly limited to his expenditures in that behalf, with interest thereon, and should not include the reimbursement of any indebtedness of the corporation to him in respect to which he was, in common with others, a simple creditor of the corporation.

Id. — Rights of Grantee with Notice — Fiduciary Relation — Demand of Reconveyance. — A grantee of such managing agent, who took with knowledge of his relations to the corporation, and of the manner in which his title was acquired, and who also occupied fiduciary relations to the corporation as an attorney and director thereof, cannot resist a decree of reconveyance upon the ground that no demand had been made upon him for such reconveyance, and that he had not refused to convey before suit brought, as his title, not being independent, must stand or fall with that of his grantor.

Id. — Protection of Bona Fide Mortgagee. — A *bona fide* mortgagee of such managing agent, who took a quitclaim deed of a portion of the premises as security for present and future loans, without notice of any equities of the corporation, and for a valuable consideration, will be protected in equity against the enforcement of the trust.

Appeals of several parties, separately taken from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying the motion of each for a new trial.

The facts are stated in the opinion of the court.

*Cope & Boyd*, for Appellant Boyd.

*William M. Pierson*, for Appellant Pattee.

*Mesick & Maxwell*, for the San Francisco Water Company, Appellant and Respondent.

Fox, J. — The pleadings and findings in this case are somewhat voluminous, and we do not deem it necessary to recite them with any considerable detail. The case and its facts, briefly stated, are as follows: —

The plaintiff was incorporated in July, 1867, for the purpose of acquiring and supplying water to the inhabants of the city and county of San Francisco. Its by-laws provided for the appointment of a secretary, and very fully defined his duties. Under them, the defendant Pattee was appointed secretary in 1867. There is a dispute as to when he ceased to be such, — he claiming that he resigned in August, 1878, and the plaintiff insisting that he continued to be secretary, and to act as

such, until January 4, 1881. Some time prior to the 26th of February, 1878, the plaintiff had become the owner and possessed of certain lands in San Mateo County, taken up as government lands, the title to a part of which was not perfected until some time afterwards. No assessment was ever levied upon the stock of the corporation. Whenever money was needed to pay expenses or liabilities, the secretary went to the president, or others of the directors, and got the money required, or in default thereof, the liabilities remained unpaid. The enterprise was unsuccessful, and it would seem that as early as 1872 the hope of bringing it to a successful issue was abandoned; for in October of that year the board of directors passed a resolution allowing the secretary the sum of one thousand dollars as compensation for his services up to that time, and authorizing the same to be placed to his credit on the books, to bear interest at the rate of one per cent per month, to be compounded semi-annually until paid, and the president assured him that when they made a sale of their lands and water rights, as they hoped to do, he should be well compensated for his further services. This anticipated sale, however, was never effected, and in May, 1878, the company was in debt, with no funds to meet its obligations. A meeting of the directors was holden, and the secretary reported these facts to the board, calling attention, among others, to a debt due one Rosenblum. The board refused to levy any assessment, and the stockholders refused to advance further funds, but the board passed a resolution authorizing the president and secretary to make a loan of two thousand dollars to meet the outstanding liabilities, and to secure the same by a mortgage upon the company's property. The secretary undertook to negotiate this loan, but was unsuccessful. In August or September, 1878, the secretary told the president that he had been unable to make a loan, and that he was so annoyed by the bills that he would not

longer act as secretary. About the same time he told the defendant Boyd, who was the attorney and one of the directors of the company, the same thing in substance, and in October, 1878, he made a pencil entry in one of the books of the company, " Resignation of secretary filed." It does not appear, however, that any resignation was ever in fact filed, and Pattee kept and retained all the books and papers of the corporation until January, 1881. No meeting of the directors was held after that of May, 1878, until January 4, 1881.

In August, 1878, Rosenblum commenced an action against the company for the amount of his claim before a justice of the peace in Santa Clara County. When the officer attempted to serve the summons upon the secretary, he refused to accept the service, and told the officer that he was not the secretary; thereupon service was made upon the president. The papers were turned over to Boyd, who was the attorney and a director of the company, and he employed the defendant Travers to appear specially in the case, and move to dismiss for want of jurisdiction. This Travers did, but his motion was denied, and judgment entered against the company. Travers reported the facts to Boyd, who paid him for his service, and dismissed him from further service in the case. In November of that year execution was issued upon this judgment, the property sold, and at the sale Travers appeared and bid in the property in his own name, but with money furnished by Pattee, and at Pattee's request. In due time the sheriff's deed was regularly issued under this sale, and the title thus acquired was transferred to and became vested in Pattee.

During all former years it had been Pattee's custom to collect the necessary funds from some of the stockholders, and pay the taxes upon the company's property; but in 1877 he did not do so, and in February, 1878, the property was sold for delinquent taxes of the year 1877–78. Pattee procured an assignment of the certificate of

sale, and ultimately the tax title under sheriff's deed also became vested in him. In the fall of 1879, having secured the title under these two sales, Pattee entered into possession of the land, by securing attornment from the tenants to him, he having theretofore had the general charge of the leasing of the land, collection of the rents, and of other matters connected with its management.

None of the officers or stockholders of the corporation, except the defendant Boyd, to whom Pattee conveyed a half-interest in the property so acquired, in consideration of the payment to him of one half the cost thereof, had any knowledge of these transactions, by which Pattee and Boyd had come into the title and possession, until very shortly before the 4th of January, 1881. At the meeting held on that date, Pattee was asked about the matter, and then openly, and for the first time, so far as notice to the company was concerned, declared that he had acquired and held the property in his own right, and in hostility to the company, — a claim which the company by its directors there and then repudiated. In 1878 and 1879, it ought to be stated, Pattee had been inquired of in regard to the delinquent taxes, and replied that it was all right; that he had bid in or redeemed the property. But he did not say that he had bought it in for his own benefit. In April, 1884, the president of the company, by authority of the board of directors, offered to reimburse Pattee and Travers all moneys they had paid out in securing their said titles, as well as certain moneys which Pattee had expended in procuring patent from the United States for a part of the land, together with interest thereon, and demanded that they respectively reconvey to the company; but they each refused to accept such reimbursement, or to make such conveyance. Shortly afterwards this action was brought.

Meantime, and in 1882, the defendant Pattee had executed to the defendant Low a quitclaim deed of his half of the property, which the court finds was given as secu-

rity for present and future loans made by the Anglo-California Bank, Limited, of which Low was one of the managers, and that such conveyance was so accepted without notice of any equities of the plaintiff, and for valuable consideration.

The action is to declare a trust, and to compel reconveyance of the property, upon repayment of all the moneys expended in securing those adverse titles, and procuring the patent, with interest thereon; the plaintiff claiming that because of the fiduciary relations of the defendants, Pattee, Boyd, and Travers, neither of them could acquire and hold these titles, as against the corporation, without first giving the corporation notice of their intention in the premises; and also claiming that Low was not a *bona fide* purchaser without notice and for value. The court found in favor of the plaintiff upon all the questions as to the fiduciary relations of the defendants, Pattee, Boyd, and Travers (the latter of whom, however, seems to have been a mere agent of the other two), and found in favor of the defendant Low, and the bank; that the conveyance to Low was made without notice, and for valuable consideration; and judgment was entered accordingly. Motion for new trial made and denied, and the plaintiff appeals from that part of the judgment in favor of Low and the bank; defendant Pattee appeals from that part of the judgment against him, and from the order denying his motion for new trial, and the defendant Boyd takes a like appeal as to that part affecting himself.

The defendant Pattee appeals on the ground of errors of law, insufficiency of evidence to justify the decision, and that the decision is against law. We have carefully examined the record on his appeal, and find no prejudicial errors of law in the matters covered by his assignments of error. The evidence also seems to sustain the findings, and the findings support the judgment. The issue upon which it is claimed that there was no finding

— that of the value of the property — is an immaterial one. In his argument, counsel for this appellant claims that the court should have found in favor of this defendant, under his plea of laches and the statute of limitations. We think that in that regard the finding supports the judgment, and is supported by the evidence, but if it was not·so, there is nothing in this defendant's assignments of error or specifications of insufficiency upon which to base the argument.

It is also claimed for this defendant that his relations to the company were not of a fiduciary character, and that even if they were, he was not for that reason forbidden by law to buy in the property for his own benefit, at a forced sale not made by himself or at his instigation.

The terms of the by-laws make him in large degree the general agent and manager of the corporation. The supervision of nearly all its affairs was committed to him, and the evidence shows very conclusively that during many years, while the corporation was in a state of inactivity, he·was its head and front; it had no knowledge of its own affairs except as he gave it, and met or moved only as and when he suggested. He was therefore bound to act towards the corporation in the highest good faith, and was not at liberty to obtain any advantage over the corporation by concealment from its directors of the true condition of its affairs. (Civ. Code, sec. 2228.) Under section 2230 of the same code he had no right to take part in any transaction concerning the property of the corporation, all of which was practically in his keeping, adverse to the interests of the company, without the consent of its directors, given upon full knowledge of the facts. If he did so, it was a fraud against the company (sec. 2234), and if by doing so he acquired any interest adverse to the interest of the company, it was his duty to give immediate information thereof. (Civ. Code, sec. 2233. See also *Baker* v. *Whiting*, 3 Sum. 475.)

It is also claimed that he ought not to be decreed to make restitution, except upon payment, not only of his expenditures in that behalf, with interest, but also of all other indebtedness of the corporation to him. For all claims except such as it is provided in the decree that he shall be reimbursed, he was, in common with others, a simple creditor of the corporation. Without resort to or waiting for the sales under which he acquired the titles in question, he could at any time have subjected the property of the corporation to the satisfaction of his claim, and if insufficient, or whether insufficient or not, he had also his remedy against the stockholders. We know of no law, and have been cited to none, which would justify him in secretly procuring an adverse title to the company's property, and then compelling the company to give him a preference over all other creditors before it could be redeemed. When redeemed, he and other creditors will stand upon a common level, as they did before. If the doctrine thus contended for were sustained, he would have gained an advantage by his forbidden act, in direct violation of the provisions of the code which we have cited.

The defendant Boyd appeals upon the ground that the evidence was insufficient to justify the decision, that the decision was against law, and of errors of law. His specification of grounds of insufficiency and of errors is much more elaborate than on Pattee's appeal, but much to the same effect; and on the argument it was conceded that as to most, if not all, the points made the judgment must necessarily follow that rendered on Pattee's appeal. But in Boyd's case it was expressly found that no demand had been made upon him for conveyance, and no refusal to convey, before suit brought. If Boyd held by a title independent of that acquired by Pattee, this fact might raise a question for serious consideration; but as he holds under Pattee, and took with a full knowledge of Pattee's relations to the company, and of the manner in

which Pattee's title was acquired, himself also occupying fiduciary relations to the company, his title must stand or fall with that of his grantor.

The plaintiff appeals from the judgment, on an exception taken to the seventeenth finding, in favor of the defendant Low, and that portion of the judgment which is based thereon. In the bill of exceptions all the evidence upon which said finding is based is set out, and we think it fully supports the finding. It in turn supports the judgment.

On each of said appeals, the judgment and order is affirmed.

PATERSON, J., McFARLAND, J., SHARPSTEIN, J., and THORNTON, J., concurred.