[S. F. No. 2674.    In Bank.—November 12, 1904.]

PACIFIC VINEGAR AND PICKLE WORKS, Appellant,
v. SIDNEY M. SMITH, Respondent.

SIDNEY M. SMITH, Respondent, v. PACIFIC VINEGAR
AND PICKLE WORKS, Appellant.

CORPORATIONS—ILLEGAL CONTRACTS BY PRESIDENT WITH HIMSELF INDIVIDUALLY — TRUST RELATION — UNTENABLE ACTION TO ENFORCE INDORSED NOTES.—One who is president and director of a corporation occupies a fiduciary and trust relation thereto; and where he purchased its notes outright, and caused the corporation, by himself as president, to become an indorser thereof to himself individually, guaranteeing the payment of the notes without the authority, knowledge, or approval of the corporation, he cannot maintain an action to enforce the express contracts of indorsement, the making and enforcement of which are equally prohibited by law.

ID.—BREACH OF TRUST—FAIRNESS AND ADVANTAGE TO CORPORATION NOT CONSIDERED.—Such contracts are a breach of trust, and voidable at the mere election of the corporation, if not absolutely void. In an action to enforce them the court will not permit any investigation as to the honesty or fairness of the contracts, nor permit the trustee to show that they were not detrimental, or that they were advantageous to the corporation.

ID.—FINDING AGAINST EVIDENCE—EXPRESS RATIFICATION NOT SHOWN—WANT OF KNOWLEDGE OF FACTS.—A finding that there was a ratification and approval of the contracts of indorsement of the notes by the corporation is not sustained in so far as it involves an express ratification, where the evidence fails to show that the corporation was in possession of all the facts and acted after knowledge thereof.

ID.—IMPLIED RATIFICATION NOT SHOWN—CONCEALMENT OF FACTS.—A ratification implied from acquiescence and acceptance of benefits is not shown, notwithstanding the secretary of the corporation joined with the president in making the contracts, where the evidence shows that all of the facts were concealed from the directors by both of them, and that, without the knowledge of the directors, the corporate name was affixed to renewal notes, and the liability continued, the existence of which they did not know.

ID.—CONCEALED KNOWLEDGE OF SECRETARY NOT IMPUTABLE TO CORPORATION.—Although it was the duty of the secretary, as well as that of the president, to inform the directors as to the facts, yet where the secretary combined with the president to conceal the facts, and falsely represented them to the directors, the president cannot invoke the doctrine that the knowledge of the secretary is conclusively imputable to the corporation, in support of an implied ratification.

APPEALS from judgments of the Superior Court of the City and County of San Francisco. J. C. B. Hebbard, Judge.

The facts are stated in the opinions of the court.

J. C. Campbell, W. H. Metson, Campbell, Metson & Campbell, and John Garber, for Appellant.

The contracts involved a breach of trust, and were illegal and not enforceable. (Morawetz on Private Corporations, sec. 517; *West St. Louis Bank* v. *Bank*, 95 U. S. 557; *Chamberlain* v. *Pacific etc. Co.*, 54 Cal. 103; *Graves* v. *Mining Co.*, 81 Cal. 303; Civ. Code, sec. 2230; *Wickersham* v. *Crittenden*, 93 Cal. 17, 29; *San Francisco Water Co.* v. *Pattee*, 86 Cal. 623, 629; *Wright* v. *Oroville etc. Mining Co.*, 40 Cal. 20, 27; *Davis* v. *Rock Creek etc. Mining Co.*, 55 Cal. 359;[1] *Wilbur* v. *Lynde*, 49 Cal. 290;[2] *Capital Gas Co.* v. *Young*, 109 Cal. 140; *San Diego* v. *San Diego etc. R. R. Co.*, 44 Cal. 106; *Shakespear* v. *Smith*, 77 Cal. 638;[3] *Finch* v. *Riverside etc. R. R. Co.*, 87 Cal. 597.) There was no sufficient evidence of ratification to bind the corporation by acts and facts not known to, but concealed from, the directors. (*Blood* v. *La Serena etc. Co.*, 113 Cal. 221; *Murray* v. *Nelson Lumber Co.*, 143 Mass. 250; *Bispool Sewing Machine Co.* v. *Acme Co.*, 153 Mass. 404; *Edwards* v. *Carson Water Co.*, 21 Nev. 469; *Elwell* v. *Puget Sound Lumber Co.*, 7 Wash. 487; *Yellow Jacket M. Co.* v. *Stevenson*, 5 Nev. 224.)

Carter P. Pomeroy, for Respondent.

The contracts were not void. They were in effect a loan of money by its president to the Pickle Works, and are enforceable. (*Mullanphy Savings Bank* v. *Schott*, 135 Ill. 655;[4] *Beach* v. *Miller*, 130 Ill. 162;[5] *Twin Lick Oil Co.* v. *Marbury*, 91 U. S. 587; *Holt* v. *Burnett*, 146 Mass. 137; *Sutter-Street R. R. Co.* v. *Baum*, 66 Cal. 44; Taylor on Corporations, par. 634; *Santa Cruz R. R. Co.* v. *Spreckles*, 65 Cal. 193; *Seeley* v. *San Jose etc. Co.*, 59 Cal. 22; *Bonney* v. *Tilley*, 109 Cal. 436; *Garrett* v. *Burlington Plow Co.*, 70 Iowa, 700;[6] *Borland* v. *Haven*, 37 Fed. 400; *Campbell's Case*, L. R. 4 Ch. Div.

[1] 36 Am. Rep. 40.
[2] 19 Am. Rep. 645.
[3] 11 Am. St. Rep. 327.

[4] 25 Am. St. Rep. 401.
[5] 17 Am. St. Rep. 291, and note.
[6] 59 Am. Rep. 461, and note.

470; *Sanford Fork etc. Co.* v. *Howe, Brown & Co.*, 157 U. S. 312; *Roseboom* v. *Whittaker*, 132 Ill. 81; *Merrick* v. *Peru Coal Co.*, 61 Ill. 472; *Harts* v. *Brown*, 77 Ill. 226.) The president had a right to purchase assets of the corporation for full value, and enforce the same at least to the extent of his money and legal interest. (Taylor on Corporations, · par. 627, and note; *Bonney* v. *Tilley*, 109 Cal. 346; *Sullivan* v. *Triumfo Mining Co.*, 39 Cal. 459; *Santa Cruz R. R. Co.* v. *Spreckles*, 65 Cal. 193; *Seeley* v. *San Jose etc. Co.*, 59 Cal. 24; *Phillips* v. *Sanger Lumber ·Co.*, 130 Cal. 459; *Borland* v. *Haven*, 37 Fed. 406; *Kitchen·* v. *St. Louis etc. Ry. Co.*, 69 Mo. 224; *Pacific R. R. Co.* v. *Ketchum*, 101 U. S. 289; *Ryan* v. *Williams*, 100 Fed. 172; 3 Thompson on Corporations, par. 4070; *Campbell's Case*, L. R. 4 Ch. D. 470.) The corporation could not cancel its indorsement without doing equity and restoring the money paid. · (Taylor on Corporations, par. 631; *Great Luxembourg Ry.* v. *Magnay*, 25 Beav. 386; *Duncomb* v. *New York etc. R. R. Co.*, 88 N. Y. 190; *Harpending* v. *Munson*, 91 N. Y. 650; *Fudihar* v. *East Riverside Irr. Dist.*, 109 Cal. 312; *Underhill* v. *Santa Barbara etc. Co.*, 93 Cal. 312; Civ. Code, sec. 1689.)

The finding of ratification must ·be sustained, though this court might come to a different conclusion of fact from the trial court. (*McMullin* v. *McMullin*, 140 Cal. 115.) Ignorance of· facts cannot avail where the facts are such as reasonably to put on ·inquiry. , (*Ballard* v. *Nye*, 138 Cal. 598; Mechem on Agency, sec. 148.) The case shows an implied ratification. (Taylor on Private Corporations, secs. 214, 216, and cases cited; 4 Thompson on Corporations, secs. 5196, 5286, and cases cited.) The secretary and general manager, Mr. King, had authority to bind the corporation by his indorsement of commercial paper. (*McKiernan* v. *Lenzen*, 56 Cal. 61.)

HENSHAW, J.—From the decision of this court in Bank, rendered in the above-entitled cause February 11, 1904, and hereafter set forth, a rehearing was granted, to the end that a finding made by the trial court, to the.effect that the Pacific Vinegar and Pickle Works ratified and approved each and every indorsement placed upon the notes of the California Packing Company by Smith as president and King as secretary, should receive further consideration. It was urged in

the petition for rehearing that although the principle of ratification was fully recognized in the opinion, through some oversight the finding declaring a ratification, which finding fully supported the judgment of the trial court, had been overlooked.

Our attention, therefore, upon this hearing is limited to the single question whether or not the finding of ratification is supported by the evidence. Respondent contends that the finding is supported, first, under evidence showing express ratification, and, second, under evidence showing implied ratification.

1. The express ratification, it is contended, finds support in the evidence of Mr. Koster, the vice-president of the Pickle Works, who, during a three months' absence of the president, Mr. Smith, performed the latter's duties. During Koster's incumbency as president he indorsed three of the California Packing Company's notes. Respondent in his brief asserts that "Mr. Koster himself testifies that at the time he made this indorsement he knew that at least one of those notes belonged to Mr. Smith, although he denies any personal knowledge of the fact that he was effecting a renewal." The evidence of Mr. Koster, with the inferences and deductions which may legitimately be drawn from it, is the only evidence touching express ratification. Mr. Koster's testimony, however, is at variance with respondent's statement of it. It is brief, and may be set forth in full: "I never knew until March, 1900, that Mr. Smith had assigned or indorsed any of those notes to himself. I never knew that there was any notes of the California Packing Company in existence outside of those which we held in the safe amounting to $12,000 or $15,000. By reason of what had been told me at the directors' meetings I believed it was all paid up. I acted as vice-president of the company during Mr. Smith's absence. During that time I indorsed three notes, one of which may have belonged to Mr. Smith, but I did not know that any of them were renewal notes. I never knew anything about renewals. I was told that some money was needed from the bank and I indorsed some California Packing Company paper which the Pacific Vinegar and Pickle Works had, for the purpose of getting money to run the business. I knew that the company had paper of the California Packing Company, but did not know any of it

was renewed until after Mr. King's defalcation. I did not see any renewal notes brought to me. If there had been any renewal notes brought to me that would have stopped right there. No notes were brought to me which had already been renewed by the Pacific Vinegar and Pickle Works. In every instance I asked Mr. King if the notes of the California Packing Company were being paid and he told me 'Yes.' " It is to be remembered that the directors, one and all, testified that they had no knowledge of any of these transactions; they knew nothing of the existence of the California Packing Company notes held by Smith upon which their company (the Pickle Works) was liable as indorser, and that at every directors' meeting, in the presence and hearing of Mr. Smith, the president, they asked if the California Packing Company's notes were being paid at maturity, and always received an affirmative answer from the secretary. Bearing in mind that an express ratification can only be found against a party when it is shown that he is in possession of all the facts, and has acted after such knowledge, it is at once apparent without further discussion that the testimony of Mr. Koster falls far short of establishing such a ratification.

2. The doctrine of implied ratification is invoked to support the finding. The doctrine of implied ratification is thus expressed: "An implied ratification may also arise if the corporation accepts the benefit of the unauthorized act, but a corporation will not be held to have ratified an act impliedly by accepting the benefit of it unless knowledge of the act was actually possessed by some corporate agent who had authority to act for the corporation in the matter, or whose function it was to report it to the proper authorities, or unless knowledge of the act would have been possessed by some such agent had there not been neglect of duty on his part, the consequences of which are to be borne by the corporation rather than by the party from whose performance it has been benefited. Consequently, in order to constitute an implied ratification on the part of the corporation, arising from acquiescence, or from accepting the benefit of an act, it may not be necessary that the circumstances should be such as to warrant a jury in finding actual knowledge on the part of the corporation, or corporate agents competent to ratify, for the knowledge of one agent may, at least in the absence of proof to the contrary,

be imputed to other agents who have authority to do the acts in question, or even to the corporation." (Taylor on Private Corporations, 2d ed., secs. 214, 215.)

It is urged that the facts in this case show that the corporation received the benefit of the money paid by its president, Smith, in discounting the notes of the Packing Company, and that as the secretary King joined with Smith in indorsing the name of the Pickle Works upon the notes, and as it was King's duty to inform the corporation of these facts, the negligence upon his part in not doing so is not negligence of which the corporation can avail itself while retaining the proceeds of the notes; and that, therefore, by conclusive implication the corporation had knowledge of the transaction and thus ratified it. The whole structure, it is to be observed, is built upon the somewhat flimsy foundation of a mere disputable presumption—a presumption which, while in strictness evidence, has been characterized as evidence "the weakest and least satisfactory." The case here presented is not at all parallel with those where the directors themselves are in fault for not knowing the things with knowledge of which they are sought to be charged. Here it affirmatively appears that knowledge of these transactions was concealed from the board of directors not by the secretary, King, alone, but by the president of the company, who was drawing a salary for his services, who attended the directors' meetings, and who never, such is the record, informed his board as to any of these matters, but sat silent when his directors asked as to the payment of the notes of the California Packing Company, and when the secretary answered with the false statement that they were being promptly met. It appears, therefore, that the directors did what in reason they might have been expected to do,— made inquiries in open board,—and were deceived, not alone by the answers of the secretary, but by the silence of their president, whose duty, equally with the secretary, it was to tell them the truth. So telling them, the directors would have known that their corporation stood liable upon the paper of the California Packing Company as indorser for thousands of dollars which they knew not of, that their liabilities were to this extent increased, and they would have been in a position to take steps to reduce that liability and enforce the obligations of the California Packing Company. By the method

which Smith adopted, however, they were kept in ignorance of these things, their corporate name was affixed to renewal notes, thus continuing their liability, and not that alone, but continuing a corporate liability which they did not know existed. Under these circumstances it cannot be successfully argued that the president of the corporation is entitled to invoke the doctrine of implied ratification, and thus reap the fruits of his own concealment.

For the foregoing reasons, in addition to those given in the opinion above referred to, which opinion is hereby adopted and affirmed, the judgment appealed from is reversed and the cause remanded.

McFarland, J., Lorigan, J., Van Dyke, J., and Beatty, C. J., concurred.

The following is the opinion above referred to and approved, which was rendered in Bank February 11, 1904:—

LORIGAN, J.—These cases are both presented on a consolidated transcript on appeal, and, as the same general principles of law are applicable to both, they will be considered together.

The first action is brought by the Pacific Vinegar and Pickle Works (which for brevity will hereafter be referred to as the Pickle Works or corporation), to enjoin the said Sidney M. Smith from selling or transferring certain promissory notes not yet due, given by a corporation known as the California Packing Company to said Pickle Works, and indorsed by said Smith as president of the latter to himself; also for the cancellation of such indorsements.

The second action is brought by said Sidney M. Smith against the Pickle Works, to obtain judgment on notes executed by the same Packing Company to the Pickle Works, and similarly indorsed and held by him.

The pleadings in both cases fully raise the legal question to be disposed of, and the facts under which it is presented are as follows:—

Said Sidney M. Smith was at all the times herein mentioned a director and president of the Pickle Works, and the by-laws thereof provided that "he shall sign as president all certificates of stock, checks, notes, bills payable, acceptances,

bills of exchange, contracts, and other instruments in writing, and shall have full power to act in all respects as the general agent and manager of the company, subject to the advice of the board of directors''; that said Pickle Works was doing business with a corporation known as the California Packing Company, under a contract which provided that the Pickle Works should supply the California Packing Company with material, and binding the latter not to contract with any other parties for such material; that the Pickle Works sold goods to the Packing Company under such contract, and, upon monthly statements rendered, notes were given by the latter in favor of the former, indorsed by one A. B. Patrick; that some of said notes so delivered were retained by the Pickle Works, some respondent Smith had discounted by the Bank of British Columbia for the benefit of the Pickle Works, and others were purchased by said Smith, in which latter case, as when discounting them to the bank, he transferred the same by an indorsement of the name of the Pacific Vinegar and Pickle Works thereon, by himself as president; that when he purchased said notes from the Pickle Works he paid over for its benefit the face of the principal and accrued interest thereon, and that no better terms could have been obtained at a bank.

On December 13, 1899, said Smith held notes of said Packing Company so indorsed, and maturing on that date, amounting to the sum of $16,992.28, which on that day he surrendered, and took from said Packing Company a series of notes, each for about fifteen hundred dollars, maturing monthly. These renewal notes were also indorsed by A. B. Patrick, and when delivered to said Smith by the Packing Company he indorsed them to himself as before, with the name of the Pacific Vinegar and Pickle Works, by himself as president; that said renewal notes were so taken at the request of the Packing Company, and were drawn in such series of small amounts so that said company could meet them monthly, and were renewed so that the time of payment might be extended.

Aside from the renewal notes, Smith held other notes of the Packing Company, purchased by him from the Pickle Works, and similarly indorsed. Of these, three, for upwards of fifteen hundred dollars each, were paid by the Packing

Company to respondent Smith in September, October, and December, 1899, and of the renewal notes of December 16, 1899, three for fifteen hundred dollars each were likewise paid him in January, February, and March, 1900. No payments were made during these periods of any of the notes executed by the Packing Company to the Pickle Works and retained by it, although at these times the secretary of the latter had in its safe unpaid notes of said Packing Company, which in March, 1900, amounted to from twelve to fifteen thousand dollars, besides which there were outstanding, on that date, notes of said company, indorsed by the Pickle Works, by said Smith as president, and held by the Bank of British Columbia, amounting to about twenty thousand dollars. That none of the other four members of the board of directors of the Pickle Works had any knowledge of these transactions. It further appears that the Pickle Works is solvent. As to the actual condition, in that respect, of the Packing Company, or A. B. Patrick, the prior indorser of its paper, the record is silent, although it appears from the evidence that the Packing Company had stated to Smith that it could not pay its bills monthly and pay the full amount of the notes, and it was for that reason that he had put them in such a shape as to mature in the neighborhood of fifteen hundred dollars per month. These are some of the principal facts in the case, and are all that are necessary here to be stated in order to fully present and consider the main proposition of law involved.

Judgments were rendered in favor of Sidney M. Smith in both actions: in the first, for his costs; in the second, for the amount of the notes therein sued on ($7,654.96); and from both judgments the Pickle Works appeals.

Several points are made by appellant for a reversal, but we will consider only the main one, which we deem controlling and decisive of the case. The others are merely subsidiary and unimportant.

Broadly stated, the legal proposition insisted on by appellant is, that one occupying a fiduciary or trust relation to a corporation cannot, while such relation exists, enter into any express contract with himself individually relative to the trust property which will be binding on the corporation; that such a contract is a breach of trust, and voidable at

the mere election of the corporation, if not absolutely void; and that when such a contract is sought to be enforced, the court will not permit any investigation as to the fairness or unfairness of the transaction, nor will it permit the trustee to show that it was not detrimental, or that it was even advantageous to the beneficiary. Such an inquiry cannot be entered into.

And specially applying the rule to the facts in the case at bar, it is claimed that as the respondent Smith, at the time he acquired ownership of said notes, occupied a fiduciary and trust relation to appellant corporation, both as president and director, and that as the contracts of indorsement guaranteeing the payment of said notes by said corporation were made by himself as president to himself individually, without the authority, knowledge, or approval of the corporation, they cannot be enforced by him against it. We are satisfied that this contention of appellant is sound and sustained, not only by the code provisions of this state, but by an unbroken line of authorities.

It will be observed that no question is involved in this action of the right of a director who has advanced or loaned money to a corporation, to recover it back on a *quantum meruit*, and decisions which sustain such a right have no application. The action at bar is one brought by a director who, as president of the corporation, purchased its notes outright, and caused the corporation, by himself as president, to become indorser of the notes to himself, individually, as indorsee, and is now seeking to enforce such contract of indorsement against his corporation.

His suit is brought upon an express contract, the making of which and its enforcement are equally prohibited by law.

In this regard the general principle is clearly stated in *Bensiek* v. *Thomas*, 66 Fed. 104: "It is an elementary law that an agent authorized to act for a principal in a given negotiation cannot deal with himself. He cannot, when authorized to buy property or borrow money, sell his own property or loan his own funds without communicating the fact to his principal. An agent cannot unite his personal and representative characters in the same transaction. The doctrine applies to all persons who occupy a fiduciary relation, and it is especially applicable to the officers of a corporation,

when acting for and in behalf of the company. They cannot use their official position to benefit themselves individually. In short, an officer of a corporation is not qualified to act for his company in any transaction wherein the corporation is dealing with the officer.'' (*Wardell* v. *Railroad Co.,* 103 U. S. 651; *Mallory* v. *Mallory Wheeler Co.,* 61 Conn. 131; Bigelow on Fraud, 217; Perry on Trusts, sec. 207.) And in Morawetz on Private Corporations (sec. 517) it is said: ''The directors of a corporation have no authority to bind the company to any contract made with themselves personally. . . . Thus a president, cashier, or managing agent, having authority to sign the name of a corporation to negotiable instruments, cannot execute or indorse a note to himself or certify a check for his own benefit.''

This rule is based on sound public policy, and there also enters into it the legal principle that, in order to make an express contract, there must be the assent of two separate independent minds; that no man can effectually make a contract with himself.

In the case at bar, the respondent Smith assumed to constitute himself both the contracting parties. There is no pretense that he was dealing with the corporation represented by other members of the board of directors or with other agents thereof. He was dealing with himself,—contracting as president with himself as an individual, and was the contracting party on both sides. The corporation made no sale of these notes to or contract of indorsement thereof with him. He adjusted the whole matter, dictated the terms of the transfer by himself with himself, completed the transaction in this unilateral capacity, and it was the result solely of his own discretion and volition. To this situation the language of the court in *Mercantile Mutual Ins. Co.* v. *Hope Ins. Co.,* 8 Mo. App. 410, may pertinently be applied: ''A contrivance which reduces the two parties to one, and admits an agent representing antagonistic interests to make a bargain by himself, is so far against the policy of the law that the contract is held to be void, unless the principal chooses afterwards, and with knowledge of all the circumstances that affect his possession, to ratify the act of his agent.''

In Clark & Marshall's Private Corporations (vol. 3, sec. 759) the rule is concisely summed up in this language: ''A

person cannot as director, or other officer of a corporation, enter into a valid contract on behalf of the corporation with himself in his individual capacity, or be both vendor and purchaser, for two persons are necessary elements to the formation of a contract. The fact that he acts as an officer of the corporation on one side and for himself on the other can make no difference.''

Recurring now to the main legal proposition under discussion, it is provided by section 2230 of the Civil Code that ''Neither a trustee nor any of his agents may take part in any transaction concerning the trust in which he or any one for whom he acts as agent has an interest, present or contingent, adverse to that of his beneficiary, except . . . when the beneficiary, having capacity to contract, with the full knowledge of the motive of the trustee, and of all other facts concerning the transaction which might affect his own decision, and without the use of any influence on the part of the trustee, permits him to do so.''

And by section 2234 of the same code it is provided that ''Every violation of the provisions of the preceding sections of this article is a fraud against the beneficiary of a trust.''

These code provisions apply to directors of a corporation in their relation to it as trustees, and by section 2322 of that code they are made to apply to the respondent, as the agent of such corporation, in the case at bar.

This last section declares that ''An authority [of an agent] expressed in general terms, however broad, does not authorize an agent: . . . 3. To do any act which a trustee is forbidden to do by article II, chapter I, of the last title,'' which chapter includes the sections above quoted.

As it does not appear in this case that the respondent had any special authority from the corporation to enter into the transaction in question here, he necessarily must claim to have been empowered to make it under an authority expressed in general terms, and hence the sections (Civ. Code, 2230, 2234) in regard to trustees must apply to him as a mere agent of the corporation.

So applied, the law is inflexible, that one acting in such fiduciary capacity will not be permitted to deal with himself in his individual capacity relative to the trust property.

Upon this point, as we have said, the current of authority

in this state is unbroken, and it will only be necessary to refer at length to a few of the cases which clearly and uncompromisingly announce the rule, with general citations to such others from our own court as affirm the doctrine.

In the case of *Davis* v. *Rock Creek etc. Co.,* 55 Cal. 364,[1] where the facts are stated as well as the law declared, it is said: "But apart from this consideration, the transaction in question cannot be upheld. The law, for wise reasons, will not permit one who acts in a fiduciary capacity thus to deal with himself in his individual capacity. The position of A. Wolff, as a member of the firm of A. Wolff & Co., and his position as trustee and president of the corporation defendant, were inconsistent and conflicting. In purchasing the debts of the corporation in his individual capacity, it was to his interest to buy them at as great a discount as possible. The greater the discount the greater his gain. If he succeeded in purchasing the debts at *any* discount, to that extent he assumed to himself an advantage not common to all of the stockholders. To permit this to be done would be to permit the violation of one of the plainest principles of equity applicable to trustees. In this particular case it does not appear that Wolff assumed the demands against the corporation at any discount, neither does it appear that he did not. Nor does the policy of the law permit an inquiry into that question. Occupying, as he did, the position of trustee he should not have put himself in a position adverse to his *cestui que trust.* One cannot faithfully serve two masters whose interests are diverse."

In the still later case of *Sims* v. *Petaluma Gaslight Co.,* 131 Cal. 659, it is said: "The court was clearly correct in holding that for the reasons stated, the contract introduced in evidence on the part of the plaintiff was invalid. Being president of the defendant corporation, Van Syckel necessarily was one of the directors thereof (Civ. Code, sec. 308); and as such he occupied a fiduciary relation to the corporation and its stockholders. 'A trustee may not use or deal with the trust property for his own profit, or for any other purpose unconnected with the trust, in any manner.' (Civ. Code, sec. 2229.) He cannot take part in any transaction in which he, or any one for whom he acts, has an interest, present or

[1] 36 Am. Rep. 40.

contingent, adverse to that of his fiduciary. (Civ. Code, sec. 2230.) In fact, this rule did not have it origin with the codes, but it is much older. It is against public policy to permit any person occupying fiduciary relations to be placed in such a position that he may be tempted to betray his duty as a trustee. 'Hence the rule is unyielding that a trustee shall not, under any circumstances, be allowed to have any dealings with the trust property, with himself, or acquire any interest therein. Courts will not permit any investigation into the fairness or unfairness of the transaction, or allow the trustee to show that the dealing was for the best interest of the beneficiary.' (*Wickersham* v. *Crittenden*, 93 Cal. 29.) In *Aberdeen Ry. Co.* v. *Blakie*, 1 Macq. H. L. 461, it is said: 'So strictly is this principle adhered to, that no question is allowed to be raised as to the fairness or unfairness of the contract so entered into. It obviously is, or may be, impossible to demonstrate how far, in any particular case, the terms of such a contract have been the best for the interests of the *cestui que trust* which it was possible to obtain. It may sometimes happen that the terms on which a trustee has dealt, or attempted to deal, with the estate or interests of those for whom he is a trustee have been as good as could be obtained from any other person; they may even at the time have been better, but still, so inflexible is the rule, that no inquiry on that subject is permitted."

These authorities lay down two propositions: 1. That an expressed contract cannot be entered into by a director with himself relative to the trust property; and 2. That the court will not permit any inquiry into the question of the honesty or fairness of the transaction.

The philosophy of this rule is quite apparent, and its inflexibility is the strongest safeguard which the law can offer for the protection of the interests of the beneficiary. The great purpose of the law is to secure fidelity in the agent. When one undertakes to deal with himself in different capacities—individual and representative—there is a manifest hostility in the position he occupies. His duty calls upon him to act for the best interests of his principal; his self-interest prompts him to make the best bargain for himself. Humanity is so constituted that when these conflicting interests arise the temptation is usually too great to be overcome, and duty

·is sacrificed to interest. In order that this temptation may ·be avoided, or, if indulged in, must be at the peril of the trustee, it has been wisely provided that the trustee shall not be permitted to make or enforce any contract arising between himself as trustee and individually with reference to any matter of the trust, nor will the court enter into any examination of the honesty of the transaction.

As said by the supreme court of New York in *Munson* v. *Syracuse etc. R. R. Co.,* 103 N. Y. 74: "The law permits no one to act in such inconsistent relations. It does not stop to inquire whether the contract or transaction was fair or unfair. It stops the inquiry when the relation is disclosed, and sets aside the transaction or refuses to enforce it, at the instance of the party whom the fiduciary undertook to represent, without undertaking to deal with the question of abstract justice in the particular case. It prevents frauds by making them, as far as may be, impossible, knowing that real motives often elude the most searching inquiry, and it leaves neither to judge or jury the right to determine upon a consideration of its advantages or disadvantages, whether a contract made under such circumstances shall stand or fall. . . . The value of the rule of equity to which we have adverted lies to a great extent in its stubbornness and inflexibility. Its rigidity gives it one of its chief uses as a preventive or discouraging influence, because it weakens the temptation to dishonesty or unfair dealing on the part of trustees, by vitiating, without attempted discrimination, all transactions in which they assume the dual character of principal and representative."

So harmonious is the law on this subject that authorities might be cited indefinitely, but reference is made only to those in this state where the principles have been discussed, reiterated, and approved. (*San Diego* v. *San Diego etc. R. R. Co.,* 44 Cal. 112; *Andrews* v. *Pratt,* 44 Cal. 317; *Wilbur* v. *Lynde,* 49 Cal. 292;[1] *Chamberlain* v. *Pacific Wool-Growers Co.,* 54 Cal. 106; *Shakespear* v. *Smith,* 77 Cal. 638;[2] *Smith* v. *Los Angeles Immigration Assn.,* 78 Cal. 292;[3] *Graves* v. *Mono etc. Mining Co.,* 81 Cal. 319; *San Francisco Water Co.* ·v. *Pattee,* 86 Cal. 629; *Wickersham* v. *Crittenden,* 93 Cal. 31;

[1] 19 Am. Rep. 645.   [3] 12 Am. St. Rep. 53.
[2] 11 Am. St. Rep. 327.

*Capital Gas Co.* v. *Young,* 109 Cal. 143; *Curtin* v. *Salmon River etc. Co.,* 130 Cal. 345.[1])

We have examined the cases cited by counsel for respondent to support the validity of this contract and the right of respondent to recover upon it, but they have no relevancy to the real point involved. We will not discuss at all the authorities cited from other jurisdictions, and as to the cases in this state will mention them briefly, and then only to point out their special inapplicability.

All the cases cited by counsel are cases where either the director of the corporation whose dealings were questioned dealt directly, but illegally, with the board of directors of a solvent corporation, assuming to act for it, or dealt with such board with the knowledge or approval of the stockholders, or they are cases where the illegal action of the director was subsequently ratified and approved by the corporate authorities. In none of these cases is it held that he could deal with himself, or that a contract made with himself without the knowledge of the other directors or the stockholders, or without the subsequent ratification or approval of the corporation, could be sustained or enforced against the corporation.

This marked distinction is plainly declared in a line from one of the cases cited by respondent (*Twin Lick Oil Co.* v. *Marbury,* 91 U. S. 590), where the court says: "The defendant was not here both seller and buyer."

In the case at bar he was both seller and buyer, with the additional relation created by himself, with himself, of indorser and indorsee.

Referring now briefly to the authorities cited by respondent from this court:

In the case of *Santa Cruz R. R. Co.* v. *Spreckles,* 65 Cal. 193, no question of a director dealing with himself was involved. The plain point decided there was, that the corporation having borrowed money from the director Hihn, the latter was entitled to be repaid. But this is practically declared to be the rule in *Davis* v. *Rock Creek etc. Mining Co.,* 55 Cal. 359;[2] *Graves* v. *Mono etc. Mining Co.,* 81 Cal. 319; and *Sims* v. *Petaluma Gas Co.,* 131 Cal. 659; that where the corporation has dealt with the director he can recover upon a

---

[1] 80 Am. St. Rep. 132.                    [2] 36 Am. Rep. 40.

*quantum meruit.* Not, however, that a director can recover upon an express contract made with himself without the knowledge or sanction of the corporation.

In the case of *Sutter-Street Ry. Co.* v. *Baum,* 66 Cal. 44, and *Bonney* v. *Tilley,* 109 Cal. 346, the note and mortgage involved there were given by the corporation to a director. In *Seeley* v. *San Jose etc. Co.,* 59 Cal. 25, the plaintiff paid off a note of the corporation at the request of its president and superintendent, and thereupon the corporation gave a note to ·plaintiff to secure repayment. At an annual meeting of the board of directors and stockholders this note was recognized, sanctioned, and approved by them. There was nothing in the case calling for the application of the rule declared in *Davis* v. *Rock Creek etc. Co.,* 55 Cal. 364,[1] or cases affirming a similar principle. In fact, the court in *Seeley* v. *San Jose etc. Co.,* 59 Cal. 25, recognized the distinction, and particularly stated in its opinion that the case then in hand was not "at all like unto *Davis* v. *Rock Creek etc. Co.,* 55 Cal. 364;[1] or like the cases of *San Diego* v. *San Diego etc. R. R. Co.,* 44 Cal. 112, and *Wilbur* v. *Lynde,*" 49 Cal. 292,[2] previously referred to by us in this opinion.

Neither is *Phillips* v. *Sanger Lumber Co.,* 130 Cal. 43, applicable. The only point decided there was that the corporation had ratified the contract claimed to be illegal, and was bound by the ratification. These are all the cases from this court cited by counsel, and none of them run counter to, but clearly recognize the distinction between, cases where the director deals with the corporation, or his act, while illegal, is subsequently ratified by it, and cases where he deals with himself without the knowledge and approval of the corporation and where there is no ratification.

While some claim is made that the corporation in this case ratified the respondent's acts, it is only a claim; there is not only no evidence to support it, but the evidence is, that none of the other officers of the corporation were informed by respondent of the matter, or knew of the transaction.

It is hardly necessary to say that the general power conferred upon Smith under the by-laws did not give him authority to contract with himself. In every case where the validity of a contract made by a trustee with himself is in question,

---

[1] 36 Am. Rep. 40.    [2] 19 Am. Rep. 645.

general authority to act for the corporation must necessarily have existed in order to apply the principle invoked here. The law assumes that the trustee is invested with general power to contract, but limits its exercise to matters strictly in the interest of the beneficiary, and disqualifies him from exercising it in his own behalf. This disability directly results from the existence of the general authority.

In disposing of this matter it may be said that if a director wishes to take security for advances made to the corporation it is not requiring too much of him to ask for such security, or for whatever contract he would equitably be entitled to, in order to protect his advances.

If he fails to do so, and has any equitable claim arising from such advances against the corporation, he may bring an action on a *quantum meruit* to recover.

He cannot, however, make an express contract with himself which can be enforced against the corporation against its will; nor can the fairness of such a contract be inquired into or affect the rule.

The principles here announced apply to both cases considered on this appeal, and for the reasons given the judgments therein appealed from are reversed and the causes remanded.

Beatty, C. J., and Henshaw, J., concurred.

McFARLAND, J., concurring.—I concur in the judgment of reversal, and in nearly all that is said in the opinion of Mr. Justice Lorigan; but I think that some of the quotations to be found in the opinion state the principle of law under discussion rather too broadly. It may be well to say, also, that it is quite likely that the respondent Smith did not intend to do any unlawful act, and that what he did probably inured to the benefit rather than the injury of the Pickle Works; but well-established and just general principles of law can occasionally be invoked so as to work hardship in particular cases.