MARTIN v. CHAMBERS.

(Circuit Court of Appeals, Fifth Circuit. April 18, 1914. Rehearing Denied May 18, 1914.)

No. 2472.

1. CORPORATIONS (§ 309*)—RIGHTS OF OFFICERS—PURCHASE OF OBLIGATIONS OF CORPORATION.

An officer of a corporation has the right to purchase outstanding obligations of the corporation and to enforce payment of the same, unless the circumstances surrounding the transaction make it inequitable for him to do so.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1366–1373; Dec. Dig. § 309.*]

2. PAYMENT (§ 50*)—MERGER—PURCHASE OF OBLIGATION BY DEBTOR.

One whose duty it is to pay an obligation cannot purchase it, have it assigned to himself, and keep the obligation alive.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 130, 132; Dec. Dig. § 50.*]

3. CORPORATIONS (§ 325*)—LIABILITIES OF OFFICERS—CORPORATE DEBTS.

An organizer, officer, and stockholder of an insolvent corporation is not, in the absence of a special statute, obliged to pay the debts of a corporation; his only obligation being to administer the assets for the benefit of all the creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1442, 1457, 1458; Dec. Dig. § 325.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. CORPORATIONS (§ 545*)—OFFICERS—PURCHASE OF ASSETS OF INSOLVENT COR-
PORATION.

An officer of an insolvent corporation cannot buy outstanding obliga-
tions of the company at a discount and thus acquire a preference right to
the prejudice of other creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2170–2175;
Dec. Dig. § 545.*

Preferences by insolvent corporations to officers and stockholders, see
note to Ellsworth v. Lyons, 104 C. C. A. 8.]

5. CORPORATIONS (§ 545*)—OFFICERS—PURCHASE OF ASSETS OF INSOLVENT COR-
PORATION.

A purchase by an officer of an insolvent corporation, at full value of
notes of the company, which were a lien upon its property, for the pur-
pose of conserving the property, it appearing that, except for such pur-
chase, the lien would have been foreclosed, is not a fraud upon the other
creditors or junior lienors, and raises no equity in their favor which pre-
vents the purchaser from enforcing the lien.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2170–2175;
Dec. Dig. § 545.*]

Appeal from the District Court of the United States for the East-
ern District of Texas; Gordon Russell, Judge.

Suit by William B. Chambers, administrator, against Myra B.
Martin, executrix, who filed a cross-bill. From a decree denying the
relief prayed for in the cross-bill, cross-complainant appeals. Re-
versed, with instructions.

George Denegre, of New Orleans, La., J. P. Blair, of New York
City, Victor Leovy, of New Orleans, La., and George D. Anderson,
of Beaumont, Tex., for appellant.

Charles C. Le Forgee, of Decatur, Ill., and Wm. C. Dufour and H.
Generes Dufour, both of New Orleans, La., for appellee.

Before PARDEE and SHELBY, Circuit Judges, and CALL, Dis-
trict Judge.

CALL, District Judge. The controlling question in this case is:
Did Logan have the right to purchase the Catron notes? If he did,
the decree of the lower court should be reversed, and a decree entered
under the cross-bill filed by the appellant. If he did not, the decree of
the lower court should be affirmed.

[1] It is a well settled proposition of law that an officer of a cor-
poration has the right to purchase outstanding obligations of the cor-
poration and enforce payment of the same, unless the circumstances
surrounding the transaction makes it inequitable for him to do so.

[2] It is also well settled that one whose duty it is to pay an ob-
ligation cannot purchase it, have it assigned to himself, and keep such
obligation alive.

[3] Was Logan obligated to pay the Catron notes? We think not.
The only way the obligation is attempted to be worked out by ap-
pellee is through his (Logan's) connection with the several corpora-
tions mentioned in the bill of complaint. That connection, so far as
disclosed by this record, was as organizer, officer, and stockholder.

Do these relations impose under the West Virginia law the obligation to pay the debts of the corporation? There is no such claim made in the briefs, and no statute of West Virginia cited to such effect. We may conclude, therefore, that no such statute exists.

[4] The question must then be answered under the general law. The law is well settled that an officer of an insolvent corporation cannot buy up outstanding obligations at a discount and thus work a preference in his behalf to the prejudice of other creditors. But it is the duty of such officer to administer the assets of the corporation for the benefit of all the creditors. Therefore the only duty and obligation of an officer, even of an insolvent corporation (in so far as the duty to pay the debts of the corporation), is to administer the assets of the corporation for the benefit of all the creditors, not to pay the debts himself, except special statutes may place this burden upon stockholders and officers. On the facts in this case, we can find no personal obligation on Logan to pay off these notes with his personal funds.

[5] Are the circumstances surrounding the purchase of the notes such that it would be inequitable for Logan to enforce the notes against the corporations and persons obligating themselves to pay the same? The proofs show without contradiction that Logan purchased these notes with his personal funds at their full value and had them, together with lien reserved, assigned and transferred to himself, and did this presumably to conserve the corpus of the property of the corporation. Had he not purchased them, undoubtedly Mrs. Catron would have foreclosed the lien reserved thereby and the property been sold.

There is nowhere in the evidence a suggestion that the corporation assuming to pay these notes had the funds to do so, either at the time of the purchase or since. If the corporation had had the funds to meet the notes, and Logan, an officer of such corporation, had, instead of paying said notes from the corporation funds, bought them, we can conceive that a junior lienor could complain. Such a proceeding would to a certain extent be a fraud on him, thereby diminishing his security. But this is not the case at bar. Nowhere in the evidence have we found a suggestion that the Forward Oil Producing Company, which assumed to pay these notes, and of which Logan was an officer, at any time had the funds to meet these notes as they fell due.

Does an officer of a corporation who, from his personal funds, buys an obligation of his company and has it transferred to himself, when said company is not able to meet it at maturity, and when foreclosure of the lien is threatened, and thus prevents the foreclosure, which foreclosure might absorb most, if not all, of the assets of the company, perpetrate a fraud on the other creditors and junior lienors? We apprehend no one will maintain the affirmative of the question thus stated. Especially in view of the fact that the junior lienor had it in his power to redeem and protect his security.

Had the land increased in value there would have been no complaint. The fact that the land has decreased in value cannot make

the purchase of the notes a fraud upon the rights of Barnes. There is no act of Logan shown in the testimony that would work an estoppel at law or in equity against him from enforcing the first lien of these notes.

The decree of the lower court is reversed, and the cause remanded, with instructions to enter a decree in favor of the cross-complainant as holding the first lien for the purchase price of said notes, and a decree for complainant for the amount of his two notes, with interest, as holding second lien.