**Forest Glen Brick & Tile Co., Charles C. Schumacher, Charles C. Schumacher, as Administrator of the Estate of Charles F. Schumacher, Deceased, John C. Schumacher and Albert P. Ernst v. Henry Gade, Charles Harms, Walter H. Browne, First National Bank of Bucyrus, Ohio, and Charles G. Perkins, Receiver.**

1. Corporations—*Liability of Directors for Not Filing Final Certificate.*—The filing for record of a final certificate in the office of the recorder of the county where the principal office of the corporation is located, is necessary to a complete organization of the corporation. And the directors who assume to exercise corporate powers and use the corporate name without such filing for record, are liable under Sec. 18 of Ch. 32, R. S., entitled Corporations, for the debts and liabilities contracted by them.

2. Same—*Organization—When De Facto.*—When the certificate of complete organization is issued by the secretary of state, a corporation *de facto* comes into existence, and all acts thereunder are binding upon it, notwithstanding its directors are liable for its debts and obligations for assuming its powers and using its name, in the absence of its *de jure* existence.

3. Same—*Failure to Record Final Certificate Does Not Detract from Powers of the Corporation.*—The fact that the directors of a corporation have become liable for indebtedness incurred by them in the corporate name after the issuing of the final certificate by the secretary of state and before its recording in the recorder's office, does not detract from

the powers of the corporation, or lessen the obligation of the stockholders to pay for the stock subscribed for by them.

4. SAME—*Estoppel to Deny Corporate Existence—Failure to Record Final Certificate.*—Neither a corporation itself nor its officers or stockholders can be heard to deny its corporate existence, because of the failure to record the final certificate in the county where its principal office is located, when its liability on contracts entered into by it are involved.

5. SAME—*Who Can Not Deny Its Existence Because of an Omission to Record Final Certificate.*—Where there is an honest attempt to organize a corporation, merely because of the omission to record the final certificate of the organization in the office of the recorder of deeds of the proper county, that being the only requirement of the statute omitted to make it a corporation *de jure* as well as *de facto*, no member of the corporation can question its existence for all lawful purposes, nor will a stranger, not having dealings with the corporation, prior to the filing for record of such final certificate be permitted to deny such existence because of such omission.

6. SAME—*Proceedings to Reduce Capital Stock Not Invalid.*—The fact that the directors of a corporation have failed to file the certificate of its final organization in the office of the recorder of deeds in the county where its principal office is located, does not prevent it from taking the necessary statutory proceedings to reduce its capital stock, nor does such fact render such proceedings, when so taken, invalid.

7. SAME.—*Reduction of Capital Stock—Proceedings Held Legal.*—A corporation received its certificate from the secretary of state on June 26, 1884, but did not file it for record in the recorder's office of the proper county until April 28, 1885. In December, 1884, steps were taken to reduce the capital stock, and on December 24th a certificate of compliance with the requirements of the statute was made. On April 28th said certificate and also the certificate of final organization were filed for record in the recorder's office of the proper county, and on April 30th the certificate of reduction of capital stock was filed in the office of the secretary of state. The stock was held to have been legally reduced.

8. SAME.—*Powers before Recording Final Certificate.*—A corporation, without recording the final certificate of its organization, has power to elect officers, adopt a seal, issue stock, make contracts and do business generally. The subjecting of the directors to a personal liability for debts incurred by them in the name of the corporation, where such recording has been omitted, does not detract from the powers of the corporation in the respects named.

9. SAME—*Omission of Officers Does Not Deprive the Corporation of its Powers.*—An omission to perform an act which would afford immunity to the officers of a corporation in the discharge of corporate powers does not of itself deprive the corporation of its granted powers. And whether it is a penalty or a mere liability that is imposed upon officers for acting in the name of a corporation can make no difference.

Forest Glen Brick & Tile Co. v. Gade.

10. REDUCTION OF STOCK—*Presumption as to Notice.*—In a proceeding to reduce the capital stock of a corporation, the mere fact that after a lapse of several years, no copy of the notice sent as required by the statute can be produced, should not weigh heavily in opposition to the fact of notice, and where several stockholders testify that notices were sent to and received by them, no witness having denied that they were sent, and the certificate of the president of the corporation filed with the secretary of state in the proceedings to reduce the capital stock states that the notices required by the statute were given, the presumption is that the notices were given as required by law.

11. SAME—*Presumption that the Meeting was Regularly Called.*— Where it appears that of the total of 1,000 shares of the capital of a corporation, 820 shares were present or properly represented at a meeting called for the purpose of reducing the capital stock, the presumption is that the meeting was regularly called.

12. RECORDS OF CORPORATIONS—*Mistakes may be Explained and Corrected.*—A mistake made by a secretary of a corporation in writing up the records of its meetings, such as clearly appears to have been made, may be explained; so where, in a proceeding to reduce the capital stock of a corporation, the secretary counted the shares voted as the number represented by the reduced capitalization instead of the number under the original capitalization, he was allowed to explain the same.

13. SAME—*Officers Not Excluded from Dealing with the Corporation.*— The mere fact that a person is a director or officer of a corporation does not exclude him from buying, and asserting against the corporation, a valid outstanding obligation, not only as a claim for which the corporation is liable, but as a lien in its full integrity.

**Memorandum.**—Proceedings in chancery. In the Circuit Court of Cook County; the Hon. LORIN C. COLLINS, Judge, presiding. Bill to wind up a corporation and to distribute its assets among its creditors. The First National Bank of Bucyrus made a party upon its intervening petition as a judgment creditor; answers and replications; decree; error by the Forest Glen Brick and Tile Co., and others. Heard in this court at the March term, 1894. Affirmed in part and reversed in part. Opinion filed December 6, 1894.

## BRIEF OF PLAINTIFFS IN ERROR, ADELBERT HAMILTON, ATTORNEY.

Franchises are special privileges conferred by the government on individuals, and which do not belong to the citizens generally of common right. 8 Am. & Eng. Ency. Law, Franchise, 585.

The term "franchise" has several significations. It consists of the entire privileges embraced in and constituting the grant. City v. New York, etc., R. Co., 36 Conn. 266.

" All the functions of a corporation are in one sense franchises. The right to hold property in the corporate name, to sue and be sued in that capacity, to have and use a corporate seal and by that to contract, and some others, perhaps, are franchises which constitute the very definition of a corporation." State v. Boston, etc., R. Co., 25 Vt. 442.

The different powers of a corporation, like right to hold and dispose of property, are franchises. Pierce v. Emery, 32 N. H. 507.

To have a capital stock of a designated amount is a " function," a "power" of a corporation — and hence a franchise.

It is quite too narrow a definition of the word franchise used in this statute to hold it as meaning only the right to be a corporation. The word is generic, covering all the rights granted by the legislature. Railroad Co. v. Georgia, 98 U. S. 365.

A privilege emanating from the sovereign power of the State, owing its existence to a grant and invested in individuals or a body politic, is something not belonging to the citizen of common right. Boiler Co. v. Tripod Boiler Co., 137 Ill. 232; Board v. People, 91 Ill. 80.

The privilege or right to be a corporation is a franchise. People v. O'Hair, 128 Ill. 22; Fietsam v. Hay, 122 Ill. 293; Coal Co. v. Edwards, 103 Ill. 472.

The records of a corporation are *prima facie* or presumptive proof of the facts of corporate conduct recited there, but they are not conclusive. They were admissible for the purpose of showing that the requisitions of the charter had been complied with. As against a subscriber the minutes are presumptive, but not conclusive, evidence of these facts. The minutes must be presumed to be correct until the contrary is made to appear. Ryder v. Alton, etc., R. Co., 13 Ill. 524.

It is said that parol evidence is not the best evidence of the proceedings of the committee under the resolution. What else would be better is not stated, and we are not able to discover. Board v. Town of Sauk Center, 17 Minn. 423.

It is elementary law that the corporation books and records are always competent evidence against stockholders and officers of the corporation, and they are chargeable with the knowledge of their contents. Greenleaf on Evidence, Sec. 493; Allen v. Coit, 6 Hill (N. Y.) 318.

Parties having dealt with the corporation and having taken judgment against it as a corporation, they are estopped from collaterally questioning any essential element of organization of the company. Tarbell v. Page, 24 Ill. 46; Baker v. Backus, 32 Ill. 98; Stone v. Great West. Oil Co., 41 Ill. 94; Thompson v. Candor, 60 Ill. 248; R. R. Co. v. R. R. Co., 75 Ill. 116; McCarthy v. Lavasche, 89 Ill. 271; People v. Trustees, 111 Ill. 175; Hudson v. Seminary, 113 Ill. 625.

A director or officer of a solvent corporation may deal with it, loan it money and take security therefor in like manner as a stranger. Mullanphy Bank v. Schott, 26 N. E. Rep. 642; Beach v. Miller, 130 Ill. 162; Roseboom v. Whitaker, 132 Ill. 81.

Only creditors at the time of the transaction can complain of irregularities in proceedings to reduce the capital stock and defendants in error are not such creditors. Alling v. Wenzell, 35 Ill. App. 246; Republic Life Ins. Co. v. Swigert, 25 N. E. Rep. 681; Abbott v. Petersburg, etc., Co., 17 N. Y. Sup. 140; Glenn v. Hatchett, 8 So. Rep. 657; Bailey v. Champlain, M. & P. Co. (Wis.), 46 N. W. Rep. 539.

Oral or written declarations, by whomever made, accompanying and assisting to constitute facts in issue or facts evidentiary thereto, are competent evidence. Monroe v. Snow, 131 Ill. 126; Thorp v. Goewey, 85 Ill. 611; McFarland v. Lewis, 2 Scam. (Ill.) 344; 1 Greenleaf on Evidence, Sec. 108; Lund v. Tyngsborough, 9 Cush. (Mass.) 36; Ins. Co. v. Mosley, 8 Wall. (U. S.) 397; Newton v. Mut. Ben. Life Ins. Co. 2 Dill. C. Ct. (U. S.) 154; Castner v. Sliker, 4 Vroom (N. J.) 95; State v. Horton, 33 La. Ann. 289; Collogan v. Burns, 57 Me. 449; Swift v. Mass. Ins. Co., 63 N. Y. 186; Commonwealth v. Roberts, 108 Mass. 296; Mack v. State, 48 Wis. 271, 279; Baker v. Gausin, 76 Ind. 317; Driscoll v.

People, 47 Mich. 413; O'Connor v. Chi., Mil. & St. P. R. Co., 27 Minn. 166; State v. Banks, 10 Mo. App. 111; Smith v. Bedell, 48 N. H. 546; Ahern v. Goodspeed, 72 N. Y. 108.

The true rule admitting such evidence is that the statement or written entry testified to is a verbal act illustrating, explaining or interpreting other parts of the transaction of which it is itself a part. Mayer v. State, 64 Miss. 329.

BRIEF OF DEFENDANTS IN ERROR, H. S. MECARTNEY, ATTORNEY.

Until the company was completely organized, its stock could not have been legally reduced; and the corporate body did not exist until April 28, 1885.

The recording of the charter is necessary to the complete organization of the corporation. Loverin v. McLaughlin, 46 Ill. App. 373.

Until organized as authorized by the charter, there is not a corporation, nor does it possess franchises or faculties for it or others to exercise until it acquires a complete existence. Gent v. M. & M. Ins. Co., 107 Ill. 652.

Each shareholder in an incorporated company has a contract interest in the corporation and in the shares of every other stockholder. Any law increasing or diminishing, or changing this interest, if passed after incorporation, would be void; and in the absence of any law at the time of the birth of the corporation authorizing a subsequent increase or reduction of its capital stock, it would take the unanimous consent of all the stockholders to effectuate such increase or reduction under a subsequent law. Cook's Stock and Stockholders, Sec. 380.

If the reduction is authorized by law and the formalities have been complied with, and the proper corporate authorities purchase for the company shares of its own stock and consider the capital stock thereby reduced, the law holds that a reduction is thereby made. But if any of these elements are wanting, no reduction is effected. Cook, Sec. 282.

A vote to increase stock does not increase it. Terry v. Eagle Lock Co., 47 Conn. 141.

In order to effect a valid reduction each stockholder should be allowed to surrender such proportion of his subscription as the amount of proposed reduction bears to the whole amount of capital stock.   Currier v. Slate Co., 56 N. H. 270.

PECKHAM & BROWN, for the First National Bank of Bucyrus.

The receiver took the property subject to the existing liens which had attached before his appointment.   High on Receivers, Sec. 440; Van Alstyne v. Cook, 25 N. Y. 489.

This chattel mortgage to Charles C. Schumacher is void as against third parties, because it was not *bona fide*, in that it gave unlawful preference to directors and managers of an insolvent corporation.   Rev. Stat., Cap. 95, (Mortgages) Sec. 4; Adams v. Kehlor Milling Co., 35 Fed. Rep. 433; Lippincott v. Shaw Carriage Co., 45 Fed. Rep. 577; Roseboom v. Whitaker, 132 Ill. 81; Gaslight Improvement Co. v. Terrell, L. R., 10 Eq. 168; Bradley v. Farwell, Holmes 433.

If the mortgagee assumes to take possession, his possession must be exclusive and visible.   To let everything go on as before, merely changing the theory, is fatal.   Thompson v. Yeck, 21 Ill. 73; Gillette v. Stoddard, 30 Ill. App. 231.

A mortgagee of chattels who takes possession under foreclosure must do so for the purpose of selling, not of holding other creditors off, so that the mortgagor's business may go on as before.   Lewis v. Darcy, 71 Ill. 648.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This was a proceeding to wind up an insolvent corporation and collect its assets, including certain unpaid stock subscriptions alleged to be owing from subscribers to the capital stock of the corporation, who were made defendants, and pay its debts.

As originally subscribed, the capital stock of the corporation was $100,000.

All needful preliminary steps having been taken, a cer-

tificate of the complete organization of the corporation was issued by the secretary of state, on June 26, 1884. Such final certificate was not, however, filed in the office of the recorder of deeds of Cook county, the county where the principal office of the corporation was located, until April 28, 1885.

In the meantime, and in December, 1884, steps were taken under the provisions of sections 50 and 54 of chapter 32, entitled "Corporations," to reduce the capital stock of the corporation from $100,000 to $30,000, and under date of December 24, 1884, a properly verified and, in form, due certificate of compliance with the various requirements of the statute in cases of a reduction being made in the capital stock of corporations, was made.

Such certificate was subsequently filed in the office of the recorder of deeds, in Cook county, on April 28, 1885, and in the office of the secretary of state on April 30, 1885.

The principal contest arises on the question of whether or not the capital stock was, by the proceedings that were had, lawfully reduced from $100,000 to $30,000. The master reported in the negative, and the court sustained the master and entered a decree accordingly.

Counsel for the original complainant, Gade, and for the cross-complainant, Harms, with characteristic fairness to the court, says, in his brief:

"It was conceded there (before the master and in the Circuit Court) by the defendants in error that if the stock was legally reduced to $30,000, the creditors who became such afterward could only look to such reduced capitalization for satisfaction out of stock subscriptions.

It was likewise conceded that all these claims arose after the attempted reduction. And it is likewise here conceded that if the reduction was legally accomplished, this decree should be reversed, at least for further directions; for as it establishes stock liability on a $100,000 basis, a $30,000 basis would require a re-adjustment, of course."

The main inquiry is, therefore, limited to the single question of whether what was done by way of attempted reduc-

tion of the capital stock of the corporation, lawfully accomplished that end.

The chief objections urged against the validity of the proceedings are:

(1.)   At the time the proceedings were taken the corporation had not been completely organized.

(2.)   Written or printed notices of the stockholders' meeting to consider the question of the proposed reduction of capital were not sent to each stockholder.

(3.)   The requisite votes of stockholders representing two-thirds of all the stock of the corporation were not given in favor of the proposed reduction.

(4.)   The surplus stock above $30,000 was not called in and canceled *pro rata*, and a new basis of holdings established.

It will have been observed that the final certificate by the secretary of state, of the complete organization of the corporation, was not filed in the recorder's office of Cook County until April 28, 1885, which was the same day that the certificate of a reduction of the capital stock was there filed.

We have held that the filing for record of such final certificate in the office of the recorder of the county where the principal office of the corporation is located, is necessary to a complete organization of a corporation, and that directors of a corporation who should assume to exercise corporate powers and use the name of a corporation or pretended corporation without such a filing for record having been had, rendered themselves liable under section 18 of the act entitled "Corporations," for debts and liabilities contracted by them in the name of such corporation. Loverin v. McLaughlin, 46 Ill. App. 373.

That case is, however, clearly distinguishable from the one under consideration.

It was not there held that no corporation *de facto* had been created because of the omission to file the final certificate, but that, under the statute, directors who should exercise the corporate powers and incur debts in the name of a

corporation without the precedent performance of an act requisite to the formation of a *de jure* corporation rendered themselves liable personally for such debts.

We are not aware of any statutory provision limiting the time to less than two years from the date of the license to open books for subscriptions to the capital stock, within which the final certificate of organization shall be filed for record; and the filing of it ten months after it was issued can not be availed of to the disadvantage of the corporation or its officers by any one whose dealings with the corporation were subsequent to that time.

As soon as the certificate of complete organization was issued by the secretary of state, the corporation *de facto* came into existence, and all its acts thereafter were binding upon it, even though in addition to its own obligations arising in the course of its business there were superadded the obligations of its directors, who should assume its powers and use its name in the absence of its *de jure* existence.

There was, therefore, in December, 1884, when the proposition was submitted to the stockholders to reduce the capital stock from $100,000 to $30,000, such a corporation in fact in existence, as most clearly authorized such a proceeding between the corporation and its stockholders.

Everything had at that time been done that could have been done, except the recording of the final certificate, to confer upon the corporation all of its powers, and to afford to it all the immunities accorded to a corporation and its stockholders and officers.

That its directors might thereafter, and until the recording of the final certificate, have been liable for indebtedness incurred by them in the name of the company, did not detract from the powers of the corporation, and did not lessen the obligations of its stockholders to pay for the stock subscribed for by them, and neither the corporation itself nor its officers or stockholders would then, nor thereafter, have been heard to deny the existence of the corporation, where its liability on contracts entered into by it were involved.

There was here an honest attempt to organize a corporation, and merely because of the omission, in that undertaking, to record the final certificate of the organization in the office of the recorder of deeds of the proper county, that being the only requirement of the statute that was omitted to constitute the corporation one *de jure* as well as *de facto*, no member of the corporation could question the existence of the corporation for all lawful purposes; nor will a third person, not having dealings with the corporation prior to the recording of such certificate, be permitted to deny the existence of the corporation because of such omission. Bushnell v. Consolidated Ice Machine Co., 138 Ill. 67.

One of the powers conferred upon corporations by the statute is that of reducing its capital stock; and assuming, for the time being, that all the statutory proceedings required of a fully organized corporation to accomplish that end were complied with in what was done, did the mere fact that the corporation, when those proceedings were begun, had existence in fact only, and not in law, render those proceedings invalid?

We think not. The corporation, without the recording of the final certificate of its organization, was possessed of power to elect officers, to adopt a seal, to issue stock, to make contracts, and to do business generally. The subjecting of directors to a personal liability for debts incurred by them in the name of the corporation, where such a recording has been omitted, does not detract from the powers of the corporation in the respects named.

An omission to do something which would afford immunity to officers in the discharge of corporate powers, does not of itself, deprive the corporation of its granted powers.

And whether it is a penalty or a mere liability that is imposed upon officers for acting in the name of a corporation in the case of such an omission, can make no difference.

We fail to see why, organized as the corporation was, its stockholders might not lawfully exercise the power of reducing its capital stock.

The meeting of the stockholders held in December, 1884,

for the purpose of reducing the capital, was but one of the steps required to be done by the statute. In addition thereto, the fact of the meeting, and of the requisite vote of the stockholders in favor of the proposition, is required to be certified under oath by the president, and under the seal of the corporation, and such certificate must be filed in the office of the secretary of state, and a like certificate filed for record in the proper recorder's office.

"And upon the filing of said certificate the changes proposed and voted for at such meeting as to  *  *  *  increase or decrease of capital stock  *  *  *  shall be, and is hereby declared accomplished in accordance with the vote of the stockholders." Rev. Stat., Chap. 32, Sec. 53.

The meeting and voting by the stockholders in December, 1884, had therefore to be supplemented by the filing of the certificate of the fact, before the change in the capital stock would become "accomplished."

Such certificate was not filed as required, until after or on the same day with the filing in the recorder's office of the final certificate of organization by the secretary of state, on the basis of the original capital of $100,000.

The final certificate of organization was, as already said, filed in the recorder's office on April 28, 1885, and there can be no doubt but that with that filing, the corporation became as completely organized for all purposes as it ever could become.

On the same day and at the same hour, the certificate of the meeting of the stockholders, and of the vote in favor of the reduction of the capital stock, was filed in the recorder's office, and two days later, on April 30, 1885, such certificate was filed in the office of the secretary of state.

The "accomplished" fact of a reduction of the capital stock not existing until after the certificate of the stockholders' meeting and voting was recorded in the office of the secretary of state, such a reduction was therefore not "accomplished" until after the final certificate of organization had been filed in the recorder's office, and the corporation had thereby become fully organized for all purposes de jure as well as de facto.

Forest Glen Brick & Tile Co. v. Gade.

The statute provides that in case the directors of a corporation desire to reduce the capital stock, they may call a special meeting of the stockholders to consider the question, and that such special meeting shall be called " by delivering personally, or depositing in the post-office, at. least thirty days before the time fixed for such meeting, a notice, properly addressed to each stockholder, signed by a majority of said directors, managers or trustees, stating the time, place and object of such meeting," and also that a general notice of the meeting shall be published in a newspaper.

It is contended that such notice was not sent to each stockholder.

The mere fact that after a lapse of several years no copy of the notice sent could be produced should not weigh heavily in opposition to the fact of notice. Several stockholders testify to the fact that the requisite notices were sent out and received, and no witness denied that they were sent. Mr. Meyer, the then president of the corporation, in his certificate that the reduction had been made, filed with the secretary of state April 30, 1885, states positively, as required by statute, that the required notice was given.

The notice, containing all the statutory requirements as to time, place, object of the meeting, etc., was properly published in a newspaper; and in view of all the evidence on the subject, the presumptions are so strong that the statute was complied with in the matter of notice of the meeting, we are constrained to hold the fact to be so.

It also appears that of the total of 1,000 shares of the capital stock, the holders of at least 820 shares were present, or properly represented, at the meeting, which fact we think tends strongly in support of the presumption that the meeting was regularly called.

It is next contended that the requisite two-thirds vote of the stockholders was not given in favor of the reduction of the capital stock.

It appears that in writing up the record of the meeting of December 20, 1884, when the proposition to reduce the

capital stock of the corporation was voted upon, the secretary made it appear on the record book that only 250 shares voted in favor of the proposition.

Upon being examined with reference to the record so made, he testified, by way of explanation, that he counted the shares voted as the number represented by the reduced capitalization of $30,000, instead of the number under the original capitalization of $100,000, and that the record should read that 820 shares voted for the reduction instead of 250 shares; and explained that he was inexperienced in writing such records. It otherwise appears in evidence that at least 820 shares of the original 1,000 shares were represented in the meeting and that all voted in favor of the reduction.

This testimony of the secretary is in no wise contradicted, and it is corroborated by the certificate of the president of the corporation filed with the secretary of state April 30, 1885, that the resolution in favor of a reduction "was adopted, at least two-thirds of all the votes represented by the whole stock of said corporation voting therefor."

Whether the minutes of a stockholders' meeting are conclusive, or not, as between the stockholders and third persons whose rights have intervened upon the faith of the correctness of such minutes, need not be discussed, as no such question is presented in this cause; but that a mistake, such as clearly appears to have been made by the secretary in the instance under consideration, may be explained, can hardly admit of question. There is no question of the good faith of the stockholders themselves, or of the secretary in entering the minutes, or of the president in certifying the true facts to the secretary of state, and as against only the defendants in error, who, if the reduction of the capital stock was otherwise regularly accomplished, acquired no rights against the corporation until after the reduction was effected, we must hold that the requisite vote of the stockholders was had.

The further objection that after the meeting reducing the capital stock the certificates of stock theretofore issued

Forest Glen Brick & Tile Co. v. Gade.

were not called in, canceled, and new ones issued, if true, does not seem to be material so far as these defendants in error are concerned. It is difficult to determine from the evidence just what was done in that regard. The proceedings were certainly informal, and may have amounted to no more than memoranda made on the stubs left in the stock certificate book, indicating the reduced number of shares thereafter to be considered as held and owned by the persons to whom certificates of stock had previously been issued.

But what concern was such irregularity to the defendants in error? They are here in the attitude of creditors subsequent to the reduction of the capital stock. If the proceedings to that end were regular and valid, as we think they were, the mere fact that some or all of the certificates of stock were not on their face *pro rated* down to the basis of the new capital, does not concern them. Their rights are independent of any such action by the certificate holders.

We are of opinion, therefore, that by the proceedings at the stockholders' meeting, regularly called and held for that purpose in December, 1884, and the recording in the office of the secretary of state of a properly authenticated certificate thereof on April 30, 1885, which was a date subsequent to that of filing in the recorder's office of the certificate of the organization of the corporation, the capital stock of the corporation became lawfully reduced from $100,000 to $30,000; and that all persons having dealings with the corporation subsequent to April 30, 1885, dealt with it with notice of such reduction of the capital stock.

Having reached that conclusion, it follows, necessarily, that an entire recasting of the decree, which was entered upon the opposite theory that no valid reduction in the capital stock was accomplished by what was done, must be had, upon a proper amendment of the pleadings.

That duty will devolve upon the Circuit Court, either upon the evidence already taken or upon such other evidence as it may in its discretion determine to hear, or both.

We have spent much time in examining the master's

report and the decree based thereon, with reference to the amounts and priorities of the claims growing out of the transactions of the Schumacher appellants with the corporation.

The question first claiming attention in that regard is that which grows out of a priority allowed to the First National Bank of Bucyrus, Ohio, over certain claims of the firm of C. F. Schumacher & Sons.

The claim of the bank was based upon a judgment at law recovered by it against the Forest Glen Brick and Tile Company in the Circuit Court of Cook County, March 5, 1889, upon which execution was issued and returned unsatisfied.

After the corporation, the Forest Glen Brick and Tile Company, had become a *de facto* corporation and had begun business, but before its certificate of final organization had been filed in the recorder's office, and on August 20, 1884, February 6, 1885, and March 19, 1885, the corporation made and executed in due form, six promissory notes, aggregating $4,400, payable at various times, and to secure the same, made and executed a like number of trust deeds, by way of mortgage upon certain of its real estate, and such notes were sold to persons not connected with the company, who paid value for them in good faith. The trust deeds were properly recorded about the dates when they were made.

All of said notes were sold for the company by the firm of C. F. Schumacher & Sons, and were indorsed by one of the members of that firm. The various parties to whom they had sold the notes came to them for the money, and the firm, in order to protect its business reputation, and because of the understood liability of one of its members as indorsee on the notes, at times paid the interest on the notes as it matured, and finally, at different times between August 22, 1885, and December 28, 1888, bought back all of the notes from the holders to whom they had sold them, paying for them their face value, and thereafter continued to hold them as the obligations of and against the corporation maker thereof.

The amount paid for the notes, including interest, by the firm of C. F. Schumacher & Sons, was $4,902.09.

The real estate mortgaged to secure the notes was all sold by the receiver, by order of court, discharged from all liens, and the fund took the place of the land, and the question of priority of payment out of that fund as between the bank and the Schumacher firm arising, the Circuit Court decreed a priority in favor of the bank.

We are unable to concur in that result.

Those notes and trust deeds were made in entire good faith and sold for value long before the lien of the bank had any existence, and constituted valid first liens upon the mortgaged premises, and if they had remained in the hands of the persons to whom they had been sold, no question in all probability would have been raised as to their priority of lien. The fact that they were made before the corporation had wholly perfected its legal organization by filing the final certificate of organization in the recorder's office, but while the company was actually engaged in business as a *de facto* corporation, no more affects the validity of their lien than it does their provability as mere claims against the general assets of the corporation. Nor does the mere fact that the members of the firm of C. F. Schumacher & Sons were individually directors and officers of the corporation, exclude them from buying and asserting against the corporation such valid outstanding obligations, not alone as claims for which the corporation is liable, but also as liens in their full integrity. Beach v. Miller, 130 Ill. 162.

The decree should therefore have given priority to the Schumacher claim of $4,702.09 paid by them for the notes secured by the real estate trust deeds, over the claim of the bank upon its judgment.

The limitations within which directors may contract with their corporations are well discussed in Beach v. Miller, 130 Ill. 162, and, so far as we can see, the master's report, and the decree, correctly apply the rules there announced, with regard to the dealings with the Schumachers with the appellant corporation, in all other respects than those we have stated.

The allowance of the claim of Charles Harms for wood is objected to, but we think the decree on that account should not be disturbed.

The evidence satisfactorily shows that the wood was not only delivered, but that the title to it passed to the corporation, and that as a matter of law, if the wood had not been accidentally burned, Harms could not have reclaimed it from the corporation, as his own.

And so, of the balance of the decree, and the several claims allowed, we think substantial justice has been done. The decree should be affirmed in all things except as to the priority allowed the claim of the First National Bank of Bucyrus, and except as it relates to the stockholders, and the extent of their holdings, and their liability, upon the basis of the original capitalization, but that in those respects the decree should be reversed, with directions to direct the payment of the said claim of the firm of C. F. Schumacher & Sons, to the amount of $4,702.09 and interest, out of the funds in the hand of the receiver derived from the property conveyed by the trust deeds securing the notes held by said firm for said amount, prior to the payment of the claim of the First National Bank of Bucyrus, and to permit appellees, if they so elect, to amend their pleadings to conform to the fact of the corporation having reduced its capital to $30,000, and upon that basis to ascertain the shareholders, the extent of their holdings, and their respective liability, and to enter a new decree for the amounts for which they are severally liable; but if the appellees shall elect not to amend, then to dismiss the bill and cross-bill.

Affirmed in part and reversed in part.