[Civ. No. 1589. Second Appellate District.—May 25, 1915.]

CALIFORNIA & ARIZONA LAND COMPANY (a Corporation), Appellant, v. JOHN P. CUDDEBACK et al., Respondents.

CORPORATION—CONTRACT FOR PURCHASE OF LAND—AUTHORITY OF PRESIDENT.—The president of a corporation organized, among other things, for the purpose of carrying on the business of buying and selling land, has authority to enter into a contract on behalf of such corporation for the purchase of a tract of land, where at the time of the execution of such contract he was acting as both president and general manager of the corporation, and it was provided by the by-laws of such corporation to be the duty of the general manager to look after the purchase and sales of real estate and to contract with agents or other persons for the purchases and sales thereof.

ID.—CAPACITY OF OFFICER—EVIDENCE—SIGNATURE TO CONTRACT.—The fact that such officer annexed the word "president," and not the words "general manager" to his signature annexed to the contract and the checks given in part payment thereof, did not, under the circumstances, necessarily prove that he acted as president only in making the purchase of the land.

ID.—CONTRACT FOR SALE OF LAND—SIGNATURE OF VENDEE UNNECESSARY—CONSIDERATION.—It is not necessary in order to bind the vendors under such a contract of sale, that the contract should have been executed in writing on the part of the corporation vendee, as the vendors were bound by the contract when signed by them and they thereby furnished a valuable consideration.

ID.—VENDOR AS DIRECTOR OF PURCHASING CORPORATION—VALID CONTRACT. The fact that a vendor of land is a director of a corporation purchasing land does not render the contract void and the money paid recoverable at the option of the vendee, without regard to the actual fairness or unfairness of the transaction, where such vendor does not act for the corporation in making the sale, but the corporation is represented by its general manager, the money received in good faith for a valuable consideration and the transaction free from fraud.

ID.—WHEN TRANSACTION VOID—RULE.—The rule as to the invalidity of such transactions applies only where the officer's conduct is in the nature of an attempt to unite his personal and representative characters in the same transaction and where his official action is an essential part of the corporate action.

APPEAL from a judgment of the Superior Court of Los Angeles County. Wm. D. Dehy, Judge presiding.

The facts are stated in the opinion of the court.

John M. Hines, Jr., and Trippet, Chapman & Biby, for Appellant.

Leonard B. Slosson, for Respondents.

CONREY, P. J.—In this action plaintiff seeks to recover the sum of one thousand seven hundred and fifty dollars alleged to have been received by defendants to and for the use of plaintiff and which the defendants have refused to repay. From a judgment in favor of the defendants plaintiff appeals.

The principal questions in this case involve the validity of an attempted purchase of land by the plaintiff from the defendants, in view of alleged want of authority of an officer of the corporation to act in its behalf, and the right of the defendant Cuddeback to sell to the corporation his own real property while he was himself a director of the purchasing corporation.

In February, 1912, the California & Arizona Land Company, a California corporation, was organized by Robert G. Hill and others for the purpose of carrying on, among other things, the business of buying and selling land. The by-laws of the corporation contain provisions setting forth the duties of the president and other officers. Article XX reads as follows: "The board of directors may elect a general manager who may be the president of the corporation. It shall be the duty of the general manager of the corporation to look after the purchases and sales of real estate; . . . to contract with agents or other persons for the purchases and sales of real estate, . . . ; all of which shall be subject to the approval of the president, in the event that the president should not be the general manager."

During the entire period of time covered by the transactions under review in this action Robert G. Hill was both president

and general manager of the corporation and he was distinctively the person most active in the conduct of its affairs. Although the minutes of the board of directors do not show a formal election of Robert G. Hill as general manager, they do show that on February 15, 1912, the board adopted a motion providing the allowance to be made to him "for his services as president and general manager of the company." In the latter part of April, 1912, Robert G. Hill and the defendant Cuddeback visited and inspected a tract containing 160 acres of land owned by John P. Cuddeback and Etta B. Smith and located in the southern part of Kern County. On May 3, 1912, John P. Cuddeback and Etta B. Smith executed to appellant an instrument in writing whereby, in consideration of eight thousand dollars paid and to be paid at the times therein specified, they agreed to convey to appellant said quarter section of land. This instrument also bears the signature (made at the same time) "California & Arizona Land Co., by Robert G. Hill, President." Under this contract three payments were made during the same month, amounting in all to the sum of one thousand seven hundred and fifty dollars, which is the sum sought to be recovered in this action. These payments were made by checks signed "California & Arizona Land Co., Robt. G. Hill, Pres., W. Lambert Hill, Sec.," which were duly cashed at the bank on which they were drawn. In June, 1912, Robert G. Hill caused to be made a survey of the exterior lines of the quarter section described in the contract. Thereafter, on June 25, 1912, in a letter addressed to C. F. Smith (who was representing the vendors in the matter of receiving payments and arranging for conveyance to be made under the contract) he expressed some disappointment about the locations of boundaries of the tract as shown by the survey and suggested that the one thousand seven hundred and fifty dollars be paid back to the company, letting the vendors keep the land. He said that when he looked at the tract to buy it for the company it appeared to be inclosed on three sides with a good and sufficient barbed wire fence, whereas according to the survey the lines of the tract came entirely within and some distance from three certain lines of fences, leaving those lines of fence on the lands of other owners. The vendors did not accept the suggestion thus made for termination of the contract. There-

after, on February 24, 1913, the board of directors adopted a resolution reading as follows:

"On motion of C. E. Stoner, seconded by John M. Hines, the president is directed and authorized and empowered to demand the return of the payment of seventeen hundred and fifty dollars to John P. Cuddeback and Etta B. Smith which was paid to them by misapprehension by the president for a supposed tract of land, and he shall use his best judgment in the settlement of the matter, and if in his judgment suit should be instituted to recover the same, together with the interest, he shall be ordered and directed to institute such action or suit for said purpose and employ an attorney for said purpose."

It was stipulated that the minutes of the corporation do not show anything relating to the purchase of this land prior to the resolution above set forth. The evidence shows that the corporation was organized through the instigation and promotion of Robert G. Hill; that he and his sons, W. Lambert Hill and Clem S. Hill, were members of the board of directors, W. Lambert Hill being also the secretary; that at times when the directors were holding no meetings the business of the corporation was attended to by Robert G. Hill, who was always present when there was anything to be done. On behalf of appellant it is contended that the "misapprehension by the president" was founded upon false representations made to him by defendant Cuddeback with respect to actual locations of the boundary lines of the land described in the contract, upon which representations it is claimed that Robert G. Hill relied. The implied finding of the superior court is that such misrepresentations were not made and there is evidence quite sufficient to support the finding.

Conceding that Robert G. Hill as president alone would not have been authorized to represent the corporation in the act of purchasing this land, we think that as general manager he had such authority as prescribed by the terms of by-law No. XX. The business transacted was within the scope of the purpose for which the corporation was organized, and the contract was entered into through the instrumentality of the officer designated by the corporation to represent it in transactions of that kind. The money paid to the defendants was paid out by the corporation through the president who was also general manager, and these payments were incidents in-

volved in the power given to the general manager to look after the purchases and sales of real estate and to make contracts therefor on behalf of the corporation.   (*Leitch* v. *Marx*, 21 Cal. App. 208, 212, [131 Pac. 328].)

The contention made by appellant that Hill was attempting to act as president only, and not as general manager, is without merit, notwithstanding that he annexed the word "president" and not the words "general manager," to his signatures annexed to the contract and the checks.   It was necessarily as general manager that he negotiated for the land and there is no evidence that he claimed to exclude that office and its powers from the business when it was transacted by him.   It was not necessary in order to bind the vendors that the contract should have been executed in writing on the part of the corporation.   (*Vassault* v. *Edwards*, 43 Cal. 458; *Harper* v. *Goldschmidt*, 156 Cal. 245, [134 Am. St. Rep. 124, 28 L. R. A (N. S.) 689, 104 Pac. 451].)   Since the vendors were bound by the contract when signed by them and they thereby furnished a valuable consideration, they were entitled to receive the money which came to them as part payment, unless the contract is subject to cancellation for some reason not yet discussed herein.

Appellant's counsel contend that because one of the vendors was a member of the board of directors of the vendee, the contract may be avoided and the money paid may be recovered at the mere option of the vendee and without regard to the actual fairness or unfairness of the transaction.   Thus, where a loan of bank funds was made to the president of a bank pursuant to a vote of two out of three directors present at a board meeting, the president being one of the two voting for the loan, it was held that such transaction was in violation of trust on the part of the borrower.   (*Wickersham* v. *Crittenden*, 93 Cal. 17, 31, [15 L. R. A. 106, 28 Pac. 788, 790].)   But even there the court said: "Whether the transactions objected to could have been avoided by the plaintiff if Crittenden had taken no part in them, or if they had been had under the authority of a majority of the board of directors, who were competent to act, need not be considered . . . "   (See, also, *Pacific Vinegar etc., Works* v. *Smith*, 145 Cal. 352, 366, [104 Am. St. Rep. 42, 78 Pac. 550], and cases there cited.)   It appears, however, that the rule above stated applies only where the officer's conduct is in the nature of an attempt to

unite his personal and representative characters in the same transaction and where his official action is an essential part of the corporate action. This is illustrated in the case of *Schnittger* v. *Old Home etc. Mining Co.*, 144 Cal. 603, [78 Pac. 9]. Here two directors of a corporation secretly furnished the funds to a third person who loaned the money to the corporation and took as security a mortgage on the corporation's property, these directors being in fact the real owners of the note and mortgage. The loan was authorized by the consenting votes of the other three directors and was afterward authorized by a vote of more than two-thirds of the stockholders at a meeting called for that purpose; the said directors and stockholders being ignorant of the fact that the other two directors were the real mortgagees acting through a dummy representing them. A decree of foreclosure of this mortgage was sustained by decision of the supreme court.

The court said (p. 607 of 144 Cal. [78 Pac. 10]) : "The question presented upon this appeal does not involve the validity of a transaction in which the director of a corporation has executed a contract on behalf of the corporation in which he is personally interested, without any previous authority of the corporation, or where the resolution authorizing its execution depended upon his vote therefor. The transaction was had under the authority of the corporation, given at a meeting of the board of directors at which all were present, and although the court finds that at that meeting Hahn and McKewen 'were present and participated therein,' it does not find that they voted upon the proposition for the loan. But, even if they had voted for it, the transaction would not have been thereby vitiated, inasmuch as the votes of the other three members of the board were sufficient to make the resolution effective. (*Porter* v. *Lassen County etc. Co.*, 127 Cal. 261, [59 Pac. 563].) . . . It was no violation of their duty as trustees to loan the money in the name of another rather than in their own, unless it could be shown that thereby the corporation sustained some detriment, or they obtained some undue advantage over the corporation."

In this case it does not appear that defendant Cuddeback attempted to act for the corporation in selling to it land owned by himself and Mrs. Smith. The corporation was completely represented by Robert G. Hill under the authorization to

which we have referred.   The money was received by Cudde-
back and Smith in good faith for a valuable consideration and
in a transaction untainted with fraud.   Under these circum-
stances the plaintiff is not entitled to recover in this action.

The judgment is affirmed.

James, J., and Shaw, J., concurred.