[Civ. No. 8301. First Appellate District, Division One.—January 20, 1933.]

Z. J. KLEINSASSER et al., Appellants, v. W. M. McNAMARA et al., Respondents.

Walter M. Gleason, H. A. Savage, Morgan J. Doyle, J. L. Royle, Humphrey, Searls, Doyle & MacMillan and Henry W. Ballantine, for Appellants.

George W. Nilsson, Charles H. King, and M. F. McCormick for Respondents.

TUTTLE, J., *pro tem.*—This is an action brought by certain stockholders of Elberta Oil Company, a corporation, to enjoin that corporation and the directors thereof from entering into a proposed contract. Plaintiffs also pray that the board of directors be removed, and for other relief. The court found in favor of defendants, and judgment was entered accordingly. This appeal is taken from said judgment.

The trial of the action occupied some twelve days, and the record is quite voluminous, taking up several thousand pages. The principal attack of appellants is based upon the insufficiency of the findings to support the judgment.

At the time the proposed contract was entered into, and for several years prior thereto, defendant Elberta Oil Company (hereinafter referred to as defendant company) was

in possession, under lease, of certain potential oil properties in San Luis Obispo County, known as the Johns lease, the Elberta lease and the Leach lease. In the month of October, 1927, drilling operations disclosed live oil sands in a well upon the Elberta lease. Drilling operations were immediately suspended, and were not resumed until December 24, 1927, and were thereafter continued until the pumping of oil was commenced on January 8, 1928. Between the dates of October 27, 1927, and January 8, 1928, defendant directors personally acquired certain lands, options and leases in the vicinity of the Elberta oil-well and one of which properties adjoined the Elberta lease. Thereupon, certain stockholders of defendant Elberta Oil Company commenced an action to compel defendant directors to account for the properties so acquired and to turn them over to the company, upon the theory that these directors had acquired confidential knowledge of the discovery of oil by virtue of their position as directors, and have used this information to benefit themselves. In respect to the latter phase of the matter, the trial court expressly finds that it does not intend to pass upon the merits and issues embraced in said action, which was, at the time of this trial, pending in the Superior Court of Kings County.

About the first day of February, 1928, respondent directors began to negotiate with a representative of Delaney Petroleum Corporation for the purpose of selling the said properties of Elberta Oil Company and the personal properties of said directors in the vicinity thereof. A preliminary agreement was entered into, whereby said corporation defendant and directors agreed to transfer said properties for certain considerations. Thereupon, this action was filed, and an order was secured from the Superior Court of Fresno County, temporarily restraining defendant directors from executing said contract. At the conclusion of this trial said order was dissolved, and the agreement was executed upon the furnishing of a bond in the sum of $400,000.

The complaint occupies some thirty-five pages of the transcript. After reciting the facts heretofore set forth, and making numerous allegations which are evidentiary in character, we find the gist of the action to be embodied in the following paragraphs:

## "XII.

"That said defendant directors in order that they might relieve themselves from the burden and expense of paying the rentals and royalties on the properties they had acquired for their sole benefit, in direct violation of their fiduciary relationship, and contrary to the interests of the said Elberta Oil Company, and in order that they might be relieved from the drilling provisions on the said properties which they had acquired, and further, in order that they might be relieved from the burden and expense brought upon themselves by the aforesaid conspiracy and the acquisition of properties thereunder, as aforesaid, did, commencing on or about the 1st day of February, 1928, further conspire and agree together that they would combine all of their said properties so involved in litigation and legal entanglements with the said clear and marketable properties of the said Elberta Oil Company, including the valuable Elberta oil well, and make one combined sale of all of said properties, comprising approximately 1400 acres, more or less; and that said defendant directors by selling said valuable and uninvolved properties of said Elberta Oil Company would procure large sums of money, and would distribute said sums of money to themselves in proportion to their holdings so involved, and would thereby sacrifice the said properties of the Elberta Oil Company for their own personal gain and to relieve themselves from the involvements and complications in which by reason of their violation of duty and conspiracy, as aforesaid, they found themselves then in.

"That thereupon said defendant directors did agree, and particularly said Fred Nelson, president of said Elberta Oil Company, did agree that they would only pay to said Elberta Oil Company, such portion of the consideration to be received from the sale of the valuable properties of said Elberta Oil Company and their own properties so involved in litigation as they, the directors, and particularly said Fred Nelson, president, saw fit, and that said Elberta Oil Company would have to take and receive such payment as he, said Fred Nelson, as president of said Elberta Oil Company, saw fit to allow; and in this connection, plaintiffs are informed and believe and upon information and belief allege

that said directors did agree among themselves that they would make and enter into such sale and would prorate to said Elberta Oil Company for all of its said property and said oil well, a sum proportionate to its said acreage.''

The trial court found that each and all of the foregoing allegations were untrue, ''except that the court finds that the oil properties owned by Elberta Oil Company were sold jointly with certain oil properties purchased by defendant directors and their associates, being the same properties hereinbefore referred to as being claimed by certain stockholders of Elberta Oil Company to be the property of Elberta Oil Company''.

As a conclusion of law the trial court found that ''the agreements made and proposed to be made by Elberta Oil Company and said several defendants with the Delaney Petroleum Corporation hereinbefore referred to are, and each of them is, fair, honest and for the benefit of said corporation''.

Judgment was accordingly entered that plaintiffs take nothing by the action.

Practically all of the five hundred pages of appellants' briefs are devoted to an attack upon the findings and judgment. Their position is indicated by the following language:

''First: That the findings of fact and conclusions of law do not support the judgment in this case. The judgment for the defendants is obviously based upon the conclusions of law of the court to the effect that the Delaney deal was a fair, honest and beneficial transaction for the Elberta Oil Company; in other words, the judgment rests upon the theory that the transaction is invulnerable if fair, honest and beneficial to the corporation, notwithstanding that the Elberta directors were directly interested as individuals in said transaction in a financial way and had an interest therein adverse to that of the corporation. We shall show that this theory or premise is not in accord with California law, which says that irrespective of the fairness of the transaction it is illegal if the directors had a personal interest therein adverse to that of the corporation.

''Second: That the conclusions of law to the effect that the Delaney deal was a fair, honest and beneficial transaction for the Elberta Oil Company are absolutely contrary

to the undisputed evidence in this case, a large part of it being the evidence of the defendants themselves.

"Third: That while, as we will attempt to show hereinafter, certain of the findings of the court are contrary to the undisputed evidence, still the findings of fact as a whole are not inconsistent with the contentions of appellants; in other words, that appellants are entitled to the relief sought without disturbing the findings of fact made by the court."

Taking up the "Second" contention mentioned above, no legal ground for reversal is made therein. Conclusions of law cannot be attacked upon appeal upon the ground that they are contrary to the evidence. An erroneous conclusion of law constitutes no cause for reversal if the judgment is right. (*Spencer* v. *Duncan*, 107 Cal. 423 [40 Pac. 549]; *Morris* v. *Turley*, 94 Cal. App. 691 [271 Pac. 916].) As aptly phrased by Baldwin, J., in the case of *Haffley* v. *Maier*, 13 Cal. 13, 14, "we do not reverse for what we regard as *bad logic*, but for what we consider *bad law*". (Italics ours.)

Plaintiffs' position, as indicated from the foregoing quotations in their opening brief, would seem to indicate that they concede that the findings are supported by the evidence. It will be noted that their complaint charges specific acts of fraud upon the part of the directors in the management of the corporate property, the chief and principal charge being that, by the proposed contract and sale of its properties, defendant directors conspired to do an act which would not only be detrimental to the corporation, but would also be personally profitable to the individual directors. All such charges of fraud and mismanagement were found to be untrue by the trial court. In respect to the sufficiency of the evidence to support such findings, we have gone through the thousands of pages of the trial transcript, and are satisfied that such findings have adequate evidentiary support. A detailed discussion of the evidence thus adduced is not deemed necessary, and would unduly prolong this opinion.

Coming now to the final and principal attack made upon the findings, do the facts found support a judgment for defendants, or do they, as appellants contend, entitle them to judgment in their favor?

The facts relied upon by appellants are briefly as follows: The court found that defendant directors had acquired the title to a parcel of real property adjoining the Elberta property, and had also acquired oil leases upon certain properties in the vicinity of the Elberta property; that these individual properties of said directors were sold jointly with the oil properties of the said corporation, under the terms of the agreement now under attack, and that the sale of said individual properties and the corporate properties was embodied in separate instruments or agreements. It also appears, without dispute in the evidence, that the Delaney Company would not consummate the transaction unless the corporate properties were included therein. Or, as Mr. Delaney, president of the company, testified, "We wanted it all or none." It also appears that in thus disposing of their own properties the directors were motivated by personal interest of pecuniary advantage to them, arising, however, entirely out of their personal interest in their individual properties, and wholly unconnected and apart from any corporate interest.

Appellants insist that, although the directors may have acted in good faith and although the transaction may have been beneficial and for the best interests of the corporation, they nevertheless, by selling their own individual properties in the same transaction (though by separate instruments), placed themselves in a position where they were absolutely disqualified from making the corporate contract. Appellants argue that it is quite reasonable to suppose that the directors, in their zeal to dispose of their own properties, might have (though the court impliedly finds that they did not) been inclined to demand less consideration for the corporate properties. A corporate officer, they state, "is not even allowed to assume a position where *he might be tempted*". If the evidence shows that he assumed such a position, then there is no defense whatever available. Evidence of fairness, good faith or advantage to the corporation must be excluded. It is the duty of the court to forthwith void the transaction. This has been denominated by some text-writers as the "inflexible" rule. Ballantine, in his admirable work, "Manual of Corporate Law and Practice (1930)", states that "this is the application of the 'prophylactic' principle in its most extreme form", and he

adds that it "may seriously hamper honest corporate business".

Appellants contend that the foregoing facts bring the case within the rule relating to the conduct of corporate officers as laid down in *Western States Life Ins. Co.* v. *Lockwood,* 166 Cal. 185 [135 Pac. 496, 500]: "It matters not that the officer is entirely free from any intent to injure the corporation in the slightest degree, acting in fact in the highest good faith throughout, or that his actions really advantage the corporation. No inquiry may be made into such matter. The inquiry in this regard is stopped when the relation is disclosed." Respondents assert that the foregoing "inflexible" rule cannot be applied to the admitted facts stated; that under such facts the proposed contract is not void *ab initio;* that the door is open to questions of fairness and good faith and advantage and disadvantage flowing from the said corporate contract, and that the trial court having found for them under conflicting evidence upon those issues, the judgment cannot be disturbed.

It is undoubtedly the rule in California that under certain facts and circumstances and where an officer of a corporation attempts to deal with the corporation, the courts will not permit any investigation into the fairness or unfairness of the transaction, or allow the officer to show that the dealing was for the best interest of the corporation, but will set aside the transaction upon application of a stockholder. (*Wickersham* v. *Crittenden,* 93 Cal. 17 [28 Pac. 788]; *Pacific Vinegar etc. Works* v. *Smith,* 145 Cal. 352 [78 Pac. 550, 554, 104 Am. St. Rep. 42]; *Western States Life Ins. Co.* v. *Lockwood, supra.*) In the Wickersham case the complaint charged defendants, while acting as officers of a corporation in which plaintiff was stockholder, with fraudulent misappropriation of corporate funds, and an injunction was prayed for. In other words, defendants were charged with fraud in the handling of corporate property. Upon the ground that the complaint showed an illegal appropriation of such property, and that the defendants acted without authority in the premises, the court overruled the demurrer. The court held that the facts brought the case within the rule stated.

In the Pacific Vinegar Works case an action was brought by a director of a corporation who, while president of the

corporation, purchased its notes outright, and caused the corporation, by himself as president, to become indorser of the notes to himself, individually, as indorsee, and who brought suit against the corporation to obtain judgment upon said notes. Under the rule we have stated, it was held that no recovery could be had upon the notes. The court stated that "it has been wisely provided that the trustee shall not be permitted to make or enforce any contract arising between himself as trustee and individually with reference to any matter of the trust, nor will the court enter into any examination of the honesty of the transaction".

In the Lockwood case the corporation entered into an agreement with a brokerage firm to sell stock for certain remuneration. Immediately thereafter the president of the corporation went to the brokerage firm and secured from them a contract whereby he was to receive a share of the profits made from the sale of the stock. He collected $40,500 as his share of such profits. Suit was brought by a stockholder to recover this amount, and judgment went for plaintiff. The court held the case to be within the rule that no inquiry could be made into the good faith of the officer, or any advantage to the corporation. The court held that the president, by so acting, became a *partner* with the brokers in the net profits received under their contract with the corporation. In other words, he had placed himself in a position where he was called upon to deal with himself in different capacities—as an individual and as a representative of the corporation—and upon these facts the contract was held void.

The first case merely held that an illegal act upon the part of a corporate officer would be enjoined at the instance of a stockholder. No question of evidence was before the court. An illegal diversion of corporate funds was alleged. There was no question presented where a person occupying a fiduciary relation was placed in a position where there would be a possible conflict of interest—personal and as the corporate representative. What was said by the court upon the question of excluding evidence as to the fairness or unfairness of the transaction was unnecessary in deciding that the complaint stated a cause of action. In the other

58

two cases the "inflexible" rule was applied properly, because the facts showed that the corporate officer, while representing the corporation, made a contract with the corporation in which he was personally interested. Such dealings were voidable because of the fiduciary relationship existing between the officer and the corporation.

The circumstances under which proof of actual fraud or injury to the corporation are not necessary are stated as follows: "No principle in the law of corporations, therefore, is founded on sounder reasons, or more surely settled, than the principle that the directors, trustees, or other officers of a corporation, who are intrusted with its interests, and occupy a fiduciary relation towards it, will not be allowed to contract with the corporation, directly or indirectly, or to *sell property* to it, or *purchase property* from it, where they *act both for the corporation and for themselves*. In such a case the transaction is, at the least, voidable at the option of the corporation; and it may be avoided and set aside, or affirmed and any profits recovered, without proof of actual fraud, or of actual injury to the corporation." (Fletcher, Cyc. Corporations, vol. 4, sec. 2340.) (Italics ours.)

An examination of the cases in California where the "inflexible" rule relating to the conduct of a corporate officer has been applied impels the conclusion that in factual structure of each involved the attempt by such officer to unite in the particular transaction his personal and representative capacity. In this respect it involves more than a possible conflict of personal and corporate interests. It is where the fiduciary places himself in a position where he has a divided allegiance—where he is sailing under two flags, so to speak. This is clearly indicated by the cases from foreign jurisdictions relied upon by appellants. They quote from *Hoffman Steam Coal Co.* v. *Cumberland Coal etc. Co.*, 16 Md. 456 [77 Am. Dec. 311], where the inflexible rule is applied in this language: "Remembering the weakness of humanity, its liability to be seduced by self-interest from the straight line of duty, the sages of the law inculcate and enjoin a strict observance of the divine precept, 'Lead us not into temptation'." *This case involved the purchase of corporate property by a director.* The case of *Scott* v.

*Freeland*, [7 Smedes & M. (Miss.) 409], 45 Am. Dec. 310, *involved the purchase by a trustee of trust property.*

In the instant case the defendant directors are not dealing with themselves. They are sellers of different property to a common buyer. They are not at all or in any manner interested in the buying company. They have no stock in that company and cannot possibly derive any profit from the transaction between it and their corporation. The purchasing company is opposed to them as it is to their corporation. The trial court has found the proposed transaction to be fair and without fraud. We believe the facts of this case call for the application of the rule laid down by this court in the case of *Todd* v. *Temple Hospital Assn.*, 96 Cal. App. 42 [273 Pac. 595, 597]. In that case an officer of a corporation was attempting to assert his rights as a creditor against such corporation. Refusing to apply the inflexible rule contended for here by appellants, the court proceeded to state the law in California upon this subject as follows:

"The provisions of section 2230 of the Civil Code apply to directors and other officers of corporations, and they are forbidden to take part in any transaction concerning the trust in which they or those for whom they act have an interest adverse to the corporation; but it was not intended thereby to make a transaction between them and the corporation *ipso facto* void. Such transactions are subject to rigid scrutiny, and are voidable for fraud or any violation of the duties of the trust; but they will not be held void if shown to be in good faith and free from fraud. (*Schnittger* v. *Old Home Con. M. Co.*, 144 Cal. 603 [78 Pac. 9]; *Snediker* v. *Ayers*, 146 Cal. 407 [80 Pac. 511]; *California & Arizona Land Co.* v. *Cuddeback*, 27 Cal. App. 450 [150 Pac. 379].) Nor are such officers trustees of the property of the corporation in such sense as to disable them from purchasing and enforcing corporation indebtedness, unless the circumstances of the transaction make it inequitable for them to do so. (*Sullivan* v. *Trunfo G. & S. Min. Co.*, 39 Cal. 459; *Schnittger* v. *Old Home Con. M. Co.*, *supra;* *Merrick* v. *Peru Coal Co.*, 61 Ill. 472; *Harts* v. *Brown*, 77 Ill. 226; *Forest Glen Brick etc. Co.* v. *Gade*, 55 Ill. App. 181; *St. Louis etc. R. R. Co.* v. *Chenault*, 36 Kan. 51 [12 Pac. 303]; *Camden Safe Dep. Co.* v. *Citizens' Ice etc. Co.*,

69 N. J. Eq. 718 [61 Atl. 529]; *Seymour* v. *Spring Forest Cemetery Assn.*, 144 N. Y. 333 [39 N. E. 365, 26 L. R. A. 859]; *Inglehart* v. *Thousand Island Hotel Co.*, 32 Hun [N. Y.] 377; *Glenwood Mfg. Co.* v. *Syme*, 109 Wis. 355 [85 N. W. 432]; *Martin* v. *Chambers*, 214 Fed. 769.) In the absence of fraud or inequitable circumstances the rule that it is a violation of his trust for an officer to deal with the corporation applies only where his conduct is in the nature of an attempt to unite his personal and representative characters in the same transaction and where his official connection is an essential part of the corporate action. (*California & Arizona Land Co.* v. *Cuddeback, supra.*) Within the above rule he is not compelled by the fact alone that he is a director to forego any of his rights as a creditor; and in bringing an adversary action against the corporation he is not in any way taking advantage of his position as a director, the right sought to be asserted being entirely independent of his fiduciary status." (*Title Ins. & T. Co.* v. *California Development Co.*, 171 Cal. 173 [152 Pac. 542].)

Concluding this phase of the case, we are unable to agree with appellants in their contention that the facts found and the admitted facts justify the application of the inflexible rule for which they contend. Rather are we inclined to agree with the conclusions expressed in the Manual of Corporation Law and Practice, Ballantine, ed. 1930, at page 390, wherein the author says: "It would seem inadvisable to lay down any hard and fast rule as to the disqualifying effect of adverse interest or to make any legal yardstick. *Every case stands in its own bottom. The ultimate question is one of fact, was the bargain a good, fair and honest bargain?*" Accordingly, we are of the opinion that the point is without merit. (Italics ours.)

■ It is next contended that the proposed contract should be set aside upon a *slight showing* of unfairness to the corporation. As the court found the contract to be fair and that there was no fraud whatever upon the part of the directors, and there was sufficient evidence to support those findings, this line of inquiry is foreclosed to us. The point is without merit.

 It is contended that the court erred in failing to find upon the issue as to whether or not certain parties plaintiff were stockholders in Elberta Oil Company. The court did find that a number of the plaintiffs were stockholders. This was sufficient to secure an adjudication of all the questions involved. It is quite clear that the allegations as to stock ownership were made for the sole purpose of qualifying such parties to maintain this action. The failure of the court to find upon such issues was not prejudicial error.

 It is next claimed that the proposed contract was never legally authorized or ratified by the board of directors of Elberta Oil Company. This ground for avoiding the contract was not mentioned in the complaint, and not as an issue presented by the pleadings. An examination of the record does not disclose that condition where it may be said that such matter was made an issue at the trial by the tacit consent and conduct of the parties. We therefore hold that appellants are precluded from urging the point at this stage of the proceedings.

It is charged that the trial court erred in ten instances in the admission and rejection of evidence. The record of over four thousand pages indicates that the trial court was exceedingly liberal in its rulings in such matters. An examination of the assignments of error in this connection does not disclose any prejudicial rulings by the trial court.

Numerous other points are discussed by appellants in their voluminous briefs, but they are all ramifications of the main issues which we have undertaken to dispose of. A detailed discussion of each of them would lead to an unnecessary prolongation of an opinion which is already considerably extended.

The judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.