237 F.2d 182
 Matter of The BRIDGFORD COMPANY, a corporation, Bankrupt.
Paul W. SAMPSELL, Trustee in Bankruptcy for the Estate of The Bridgford Company, a Corporation, Bankrupt, Appellant,
v.
Hugh H. BRIDGFORD, Appellee.
 No. 14880.
 United States Court of Appeals Ninth Circuit.
 October 3, 1956.
 Rehearing Denied November 13, 1956.
 
 Craig, Weller & Laugharn, Frank C. Weller, Hubert F. Laugharn, C. E. H. McDonnell, Thomas S. Tobin, Los Angeles, Cal., Gallagher & Gallagher, Ontario, Or., for appellant.
 Kyle Z. Grainger, Los Angeles, Cal., Oakes & Horton, McNulty & Squier, San Diego, Cal., for appellee.
 Before HEALY and FEE, Circuit Judges, and SOLOMON, District Judge.
 SOLOMON, District Judge.
 On April 25, 1947, the Bridgford Company, hereafter called debtor, of which appellee Bridgford was president, a director, and principal stockholder, filed a voluntary petition for an arrangement under Chapter XI of the National Bankruptcy Act, 52 Stat. 905, 906, 11 U.S. C.A. § 701 et seq.
 The plan of arrangement, which provided for the debtor remaining in possession of its assets, was confirmed by the referee, who on November 6, 1947, appointed R. H. Hadley as general manager of the debtor to manage and conduct its affairs.
 Thereafter, the referee authorized the debtor to issue certificates of indebtedness to raise working capital and to pay such priority claims and expenses of administration as the court allowed. Each certificate was to be in the amount of $5,000.00, bear interest at 5 per cent per annum, and become due one year after date of issue. These certificates were to have priority over all existing obligations except valid liens upon the assets of the debtor and expenses of administration.
 On February 2, 1948, R. H. Hadley purchased six certificates for $30,000.00.
 On November 26, 1948, the court appointed Bridgford manager of the debtor, and two months later the court appointed two additional co-managers to serve with him.
 The debtor defaulted under the plan of arrangement, and creditors filed a petition requesting that it be adjudicated a bankrupt. On Friday, November 4, 1949, the referee held a hearing on the creditors' petition, and at the conclusion of the hearing, in the presence of Bridgford, announced his decision to adjudicate the debtor a bankrupt.
 Later that day, Bridgford contacted Hadley, who was about to enter the hospital, and obtained from Hadley, without consideration, the six certificates of indebtedness. Hadley testified:
 "Q. What was said by you at that time relative to the assignment of these indebtedness certificates? A. Well, we just discussed the matter that I hadn't been able to collect on them, and I was going to the hospital, and if anything was going to be gotten out of them I assigned them to Bridgford without any benefit to myself in any way, shape or form, with the hopes that if he did get anything out of them it would be used for the benefit of those who put money into the business, and that is the only discussion we had about it. So far as my receiving anything, I just gave him the assignment of the certificates.
 * * * * * *
 "Q. Do I understand you to say you received no consideration for the assignment of those certificates? A. That's right. As a matter of fact, I had charged them off on my income tax return, and I explained to you, Mr. Oakes, that day that all I wanted was proof of the fact that I received no value. Do you remember our discussing that?
 * * * * * *
 "Q. Was there any understanding of any kind or character between you and Mr. Bridgford at that time that you were to participate in any recoveries that should be made on those certificates? A. Nothing was to be for me, no, sir.
 "Q. I understood you to say something about that you wanted any recoveries to be used — A. I hoped if any recovery was made it would be used for the benefit of those who invested the money in the company, but I assigned the certificates without any consideration whatsoever. Correct me if I am wrong."
 At that time, Bridgford and his co-managers had in their possession $43,282.33 in cash belonging to the debtor. On the following Monday, before the order adjudicating the debtor a bankrupt was entered, Bridgford and a co-manager petitioned the referee for authority to disburse all but $60.12 of these funds. The following item was among those listed in the petition:
 "10. To H. H. Bridgford, payment on account of principal and interest on Certificates of Indebtedness of Petitioner, Nos. 35 to 40, inclusive (total principal due $30,000; total interest due $2,580)..........25,996.40"
 On the same day, the referee in an ex parte proceeding ordered the funds disbursed in accordance with the prayer of the petition.
 On the following day, the order adjudicating the debtor a bankrupt was entered by the referee. Thereafter, Paul W. Sampsell, as trustee in bankruptcy of the debtor, petitioned the referee to set aside or modify his order of November 7, 1949, relating to the payment made to Bridgford. As a result of this petition and the hearings held thereon, the referee discovered that Bridgford had acquired the six certificates without paying any consideration. He also learned that the debtor owed to a number of creditors, including a group of Oregon farmers, a sum in excess of $100,000.00, which debts were created subsequent to the issuance of the certificates.
 The referee allowed appellee's claim of $30,000.00, the face value of the six certificates, but he ordered the claims subordinated to the payment of all claims as well as to all costs of administration. He found that the appellee "was guilty of overreaching and his acts were unfair to other creditors to whom the said debtor corporation was and is indebted, and that it would be unjust, unfair and inequitable to permit the said claimant to participate in the distribution of the remaining assets of the bankrupt until all other claims and indebtedness and costs and expenses of administration shall have been paid in full."
 He further found that Bridgford had violated his fiduciary duty to the debtor by paying himself $25,996.40 on account of the six debtor's certificates which he had acquired without consideration. The referee ordered Bridgford, who had used a portion of the money to pay personal bills and who had co-mingled the balance with his own funds, to forthwith repay the full amount so received to Sampsell as trustee in bankruptcy.
 On a review of the referee's order, the District Court concluded that Bridgford's rights depended upon the priority status of the certificates at the time they were issued. Although Bridgford acquired the certificates without cost, he stood in the shoes of his assignor, who had given value for them. Since his assignor would have had priority, Bridgford was entitled to the same priority. On the basis of this reasoning, the District Court entered an order which in effect approved the original payments to Bridgford.
 The trustee in bankruptcy in his appeal contends that the District Court erred in granting a priority payment to an officer, director and court-appointed manager of an insolvent corporation, who, without paying any consideration therefor, acquired a claim against the corporation on the eve of its bankruptcy.
 We agree.
 Mr. Justice Cardozo, in the case of Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546, 62 A.L.R. 1, set forth the rigid standard imposed upon fiduciaries:
 
 
 1
 "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the `disintegrating erosion' of particular exceptions. * * * Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court."
 
 
 2
 The late Judge Ralph E. Jenney, in the case of In re Los Angeles Lumber Products Co., D.C.S.D.Cal.C.D.1941, 46 F.Supp. 77, approved this strict standard. In that case a director, officer and attorney for an insolvent corporation undergoing reorganization under Section 77B of the Bankruptcy Act purchased bonds of the corporation on the open market and from private sources at their going market price. This price, however, was substantially lower than their par value. After the plan of reorganization was confirmed, he filed a claim for the par value of the bonds. Upon objection, his recovery was limited to the amount actually paid for the bonds plus interest. He was so limited in spite of the fact that Judge Jenney found that the purchases were made openly, in good faith, and with good intentions, and that the corporation was not in the market to purchase the bonds and had no funds with which to make such purchases.
 
 
 3
 Judge Jenney, in his much-cited opinion, made a careful and exhaustive examination of the authorities relating to the duties of fiduciaries. The following excerpt is particularly applicable here:
 
 
 4
 "From these references it will be seen that the rules laid down by the courts are designed `to provide against any possible selfish interest exercising an influence which can interfere with the faithful discharge of duty which is owing in a fiduciary capacity' (Magruder v. Drury, 235 U.S. 106, 119, 35 S.Ct. 77, 82, 59 L. Ed. 151) and these rules have long been strictly enforced (Michoud v. Girod, 45 U.S. 503, 4 How. 503, 557, 11 L.Ed. 1076), and they are required `because of the demonstrated fallibility of mankind'. (Loring, A Trustee's Handbook, Shattuck Revision, p. 66.)
 
 
 5
 "It has, of course, long been established that officers, directors and attorneys of a corporation are fiduciaries and that they should be held responsible for any breach of duties as such. They may not, while the corporation is insolvent, purchase claims against it at a discount and then enforce such claims at their full face value. Bonney v. Tilley, 1895, 109 Cal. 346, 42 P. 439; Davis v. Rock Creek Lumber, etc., Co., 1880, 55 Cal. 359, 36 Am.Rep. 40. When the corporation is not only insolvent but has filed its petition under Section 77B or Chapter X of the National Bankruptcy Act as amended, 11 U.S.C.A. § 501 et seq., and the directors have become trustees of the debtor in possession, the directors' obligations as trustees become even more rigorous. In re Norcor Mfg. Co., 7 Cir., 109 F.2d 407; Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281." At page 88.
 
 
 6
 Recently, this court reaffirmed its adherence to the well-established policy of the law which imposes upon fiduciaries the highest standards of conduct. Donovan & Schuenke v. Sampsell, 9 Cir., 1955, 226 F.2d 804. The court there declared void and set aside a purchase of real property at a trustee's sale because the purchaser was the former president of a bankrupt corporation and had acted as a fiduciary with respect to the particular property.
 
 
 7
 Judge James Alger Fee, speaking for the court, stated:
 
 
 8
 "Fiduciary obligations are imposed upon corporate officers of a concern which is insolvent. They cannot buy claims against it, deal in its stock or traffic in its property. The courts refuse profit on or set aside such transactions even where bankruptcy has not intervened.
 
 
 9
 "* * * And the intervention of bankruptcy does not terminate his responsibility as an officer of the corporation. Even if the relationship had ended, the fiduciary capacity was not lost." At page 807.
 
 
 10
 Bridgford does not question the correctness of these principles of law, but he contends they are not applicable to him because: (1) he acquired the certificates from a fiduciary who would have been entitled to enforce them; (2) no one to whom he owed a fiducary duty was harmed or affected by his acquisition of the certificates; and (3) he did not traffic in these certificates because he acquired them as a gift and it involved one rather than a series of transactions.
 
 
 11
 There is no merit to any of these contentions.
 
 
 12
 A fiduciary may not relieve himself of his responsibilities to his trust merely because he acquired the claim from a person who likewise occupied a fiduciary relationship to the same trust. Each fiduciary owes an independent obligation to his trust, and he cannot use his position for his personal benefit rather than for the benefit of his trust.
 
 
 13
 The vice of Bridgford's conduct was that he used a corporate opportunity for his personal gain. As a fiduciary, he should not have taken the certificates unless he accepted them on behalf of the corporation.
 
 
 14
 Furthermore, by taking these certificates in his private capacity, Bridgford violated the rule prohibiting fiduciaries from acquiring private interests which conflict with their duty to their trust. Donovan & Schuenke v. Sampsell, supra.
 
 
 15
 The wisdom of this rule is well illustrated by the present case. Here a $30,000.00 claim against an insolvent corporation was solicited and acquired from the owner by a fiduciary without cost. The claim, which on a Friday was worthless in the hands of the owner, yielded the fiduciary almost $26,000.00 on the following Monday while creditors to whom more than $100,000.00 was due were left with $60.12.
 
 
 16
 Bridgford's arguments that no one suffered from his acquisition of the certificates and that he was not "trafficking" in them because he obtained them by gift were succinctly answered in Bramblet v. Commonwealth Land & Lumber Co., 83 S.W. 599, 602, 26 Ky.Law Rep. 1176, 1179, modified on other grounds, 1904, 84 S.W. 545, 27 Ky.Law Rep. 156:
 
 
 17
 "* * * To the argument that it does not matter to the corporation who owns its debts, so it honestly owes them, and that it is immaterial to it whether its president gets them for nothing, as it does not have to pay any more than it actually owes in any event, the answer is, it does matter, for human nature is not so constituted that the same person can fairly represent opposing sides of the same question — cannot be both creditor and debtor. * * * The policy of the law is to insure fidelity of trustees to their trusts by making it impossible for them to profitably neglect or abuse them."
 
 
 18
 To the argument that he did it only once, we believe that the high standards imposed upon fiduciaries did not permit Bridgford even "one bite."
 
 
 19
 There is no need to consider the priority status of the claims of the Oregon farmers nor the status of the certificates had they been retained by Hadley for, as we have pointed out, Bridgford is precluded from collecting more than he paid for a claim against an insolvent corporation to which he owed a fiduciary duty.
 
 
 20
 Reversed and remanded with instructions to enter a judgment in accordance with this opinion.